MINSEL v. EL RANCHO MOBILE HOME CENTER, INC.

1. Sales—Uniform Commercial Code—Construction—Policy.
   The Uniform Commercial Code is to be liberally construed so as
   to promote its underlying purposes and policies, one of which
   is to modernize the law governing commercial transactions
   (MCLA § 440.1102).

2. Sales—Nonconforming Goods—Acceptance—Exercise of Own-
   ership—Mobile Homes—Uniform Commercial Code.
   Plaintiffs buyers' continuing to dwell in a mobile home for six
   weeks after having given the defendant seller of the home
   notice of their intent to rescind their contract because of non-
   conformity was not sufficient to negate plaintiffs' revocation
   of acceptance where the plaintiffs' failure to vacate the home
   was due to their inability to find an apartment, plaintiffs
   thoroughly cleaned the home upon leaving it, paid rent and
   utilities on the mobile home lot until defendant removed
   the mobile home, defendant after the notice of revocation, did
   not offer to remedy numerous defects, the defendants did not
   contact the plaintiffs regarding removal of the vehicle until
   five months after the notice of revocation of acceptance had
   been given, defendants failed to show how plaintiffs' additional
   six weeks occupancy injured the defendants, defendants did
   not argue that the delay in vacating was perpetrated through
   bad faith or even that it was avoidable, and where plaintiffs'
   action rather that injuring the defendants served as added
   protection for defendants' property (MCLA § 440.1102[1];
   440.2602[2][a]; 440.2602[2], [6]; 440.2608).

---

References for Points in Headnotes
[1] 15 Am Jur 2d, Commercial Code § 2.
[2] 46 Am Jur, Sales §§ 763–765.
   Construction and effect of UCC Art 2, dealing with sales. 17
   ALR3d 1010.
   Use of article by buyer as waiver to rescind for fraud, breach
   of warranty, or failure of goods to comply with contract. 41
   ALR2d 1173.

Appeal from Kalamazoo, Raymond W. Fox, J. Submitted Division 3 March 4, 1971, at Grand Rapids. (Docket No. 9558.) Decided March 26, 1971.

Complaint by Peter E. Minsel and Linda J. Minsel against El Rancho Mobile Home Center, Inc., and Hampton Homes, Inc., for rescission and restitution. Judgment for plaintiffs against El Rancho. El Rancho appeals. Affirmed.

*Stanley, Davidoff, Long & Gray,* for plaintiffs.

*Howard & Howard* (by *John Oosterbaan*), for defendant Hampton Homes, Inc.

Before: FITZGERALD, P. J., and HOLBROOK and BRONSON, JJ.

FITZGERALD, P. J. Plaintiffs Peter E. Minsel and his wife, Linda J. Minsel, brought action on September 30, 1968, against El Rancho Mobile Home Center, Inc., and Hampton Homes, Inc., both Michigan corporations. Plaintiffs sought rescission of a contract with El Rancho for the purchase of a mobile home which was manufactured by codefendant Hampton Homes, as well as restitution of amounts paid under the contract, plus incidental damages and court costs.

Plaintiffs purchased their mobile home on July 16, 1968. The agreed price was $7,700 plus $1,025 for such extras as an air conditioner, a skirt, and an awning, which in turn increased the total price to $8,725. On July 23, 1968, plaintiffs paid El Rancho Mobile Homes a down payment of $2,784 and arrangements were made for delivery of the trailer to a lot rented by plaintiffs in Grand

Rapids. El Rancho delivered the mobile home on July 26 or 27, 1968, and plaintiffs actually moved into it on or about July 28, 1968. As a result of the company's failure to properly remedy numerous defects, plaintiffs tendered notice of their intent to rescind the contract on September 11, 1968. At this time the Minsels decided to move out of the trailer, but encountered considerable difficulty in finding another place to live. When they finally found a suitable apartment, they were forced to wait until November 1 before they could move in. Hence, they remained in the mobile home approximately six weeks after having tendered it back to defendant.

Upon vacating the mobile home, plaintiffs thoroughly cleaned it, continued to look after it, and paid rent and utilities on the lot until sometime in February 1969, when defendant finally removed it. Subsequent to notice, which was tendered in September, defendant did not offer to cure defects or tender the mobile home back to plaintiffs. Plaintiffs were granted the relief for which they prayed.

We shall now address ourselves to a consideration of whether the acts and conduct of plaintiffs subsequent to their notice of rescission negated any later claim of revocation of acceptance of nonconforming goods as set forth in the Uniform Commercial Code.[1] Defendants contend that it is an undisputed fact that plaintiffs retained possession and continued to use the mobile home as their domicile fully six weeks after having mailed the September 10 letter of rejection which was inconsistent with their alleged rejection and as such constituted a wrongful exercise of ownership by the buyer; hence, the defendants claim that they may treat such continued use as an acceptance. Therefore, the narrow issue

---

[1] MCLA § 440.1101 et seq. (Stat Ann 1964 Rev § 19.1101 et seq.)

becomes one of construction, more precisely whether plaintiffs adhered to the requirements set forth in MCLA § 440.2608 (Stat Ann 1964 Rev § 19.2608), at the time of revoking their acceptance. The statute reads as follows:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it."

This position is qualified in MCLA § 440.2608(3) (Stat Ann 1964 Rev § 19.2608[3]), which states:

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

Specifically, the above statute points to MCLA § 440.2602(2)(a) (Stat Ann 1964 Rev § 19.2602[2][a]), for an appropriate standard:

"(a) After rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller."

An examination of the UCC as enacted in Michigan reveals MCLA § 440.1102 (Stat Ann 1964 Rev § 19.1102), which deals with the construction of the act and its purposes. In § 1102(1) of the statute, it is stated that: "This act shall be liberally construed and applied to promote its underlying purposes and policies". One of these purposes is to "modernize the law governing commercial transactions".[2] With these facts in mind, we proceed to the determination of whether plaintiffs' actions can be reasonably construed as a continued exercise of ownership of the goods at issue.

An examination of the record discloses that the plaintiffs continued to live in the mobile home for

---

[2] MCLA § 440.1102(2)(a) (Stat Ann 1964 Rev § 19.1102[2][a]).

approximately six weeks after tendering their letter of rejection on September 10, 1968. From the time of rejection they were under a duty to protect and care for the goods of the seller for a reasonable period. As stated in MCLA § 440.2602(2)(b) (Stat Ann 1964 Rev § 19.2602[2][b]):

"If the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of the article (subsection (3) of section 2711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them."

Upon leaving, plaintiffs fulfilled this duty by cleaning the mobile home thoroughly, looking after it as well as the continuance of payment of the lot rental and utilities through February 1969, when defendants finally had it removed. The record is bare of any evidence that defendants even attempted to contact plaintiffs in connection with removal of the mobile home between September 10, 1968, and February 1969. Furthermore, defendants tendered no proofs as to how the delay in moving out may have prejudiced them, nor do they argue that the delay was perpetrated through bad faith or even that it might have been avoided. The sole assertion would appear to be that plaintiffs' continued use of the mobile home as their domicile is tantamount to an exercise of ownership and acceptance of the goods under the terms of MCLA § 440.2602(2)(a).

Should this Court apply such a harsh construction of the statutory provisions now before us, such actions would be contrary to the "rule of reasonableness" evident throughout the UCC.

The precise question now before us is novel, at least to the extent we are unable to find authority construing "exercise of ownership", which is directly

on point and determinative of the present case. Therefore, a rule of reason should prevail. We note that plaintiffs' continued use of the home for some six weeks after rejection did not injure defendants in any way, in fact, under the circumstances, and in view of defendants' failure to respond to the notification of September 10, 1968, such occupancy served as added protection for defendants' property as contemplated under MCLA § 440.2602 (2)(b) *supra*. It is for these reasons that we affirm the decision of the trial court. This determination is limited to the facts of the present case.

Affirmed. Costs to appellees.

All concurred.