125 N.J. Super. 251 (1973)
310 A.2d 491
FABLOK MILLS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
COCKER MACHINE & FOUNDRY COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 29, 1973.
Decided October 12, 1973.
*254 Before Judges FRITZ, LYNCH and TRAUTWEIN.
Messrs. Bilder, Silver & Lawrence, attorneys for appellant (Mr. Elliot A. Lawrence, of counsel and on the brief).
Mr. Israel B. Greene, attorney for respondent and cross-appellant and on the brief.
TRAUTWEIN, J.A.D.
Plaintiff Fablok Mills, Inc. (Fablok) commenced this action with a four-count complaint involving its purchase of ten knitting machines sold by defendant Cocker Machine & Foundry Co. (Cocker) seeking rescission, damages for breach of warranties of merchantability and fitness for the use intended, and fraud. After filing an answer defendant Cocker moved for summary judgment which motion was denied. Thereafter an amended *255 motion for summary judgment was filed by defendant and granted. Fablok Mills, Inc. v. Cocker Machine & Foundry Co., 120 N.J. Super. 350 (Law Div. 1972).
Facts, here relevant, follow. Plaintiff Fablok is engaged in the business of producing knitted fabrics. Plaintiff purchased ten knitting machines from defendant for a total price of $153,550, between September 15, 1964 and June 30, 1965. Shortly after the first two machines were delivered on September 15, 1964 plaintiff notified defendant that the machines were operating slowly, producing low quality and damaged fabric, leaking oil, etc. Despite these difficulties plaintiff continued to order and accepted delivery of eight additional machines, alleging similar defects thereafter. Defendant attempted to remedy the problems plaintiff complained of but was unable to do so.
The unsuccessful efforts to repair the machines continued until May 23, 1967. On this date plaintiff wrote to defendant revoking its acceptance and requested that defendant take back the machines and refund the purchase price of $15,615 per machine. Plaintiff bottomed his revocation of acceptance on the improper performance of the machines. Defendant refused either to take the machines back or refund the purchase price. Plaintiff continued to use some of the machines, replacing others and putting them in storage.
The trial judge ruled that under N.J.S.A. 12A:2-606 plaintiff, by its conduct, had accepted the goods despite their nonconformity. Furthermore, that by delaying for two years before attempting to revoke its acceptance, plaintiff rendered such a revocation ineffective as the duration of the delay was unreasonable as a matter of law under N.J.S.A. 12A:2-602(1) in view of the circumstances, i.e., machines were subject to wear and tear. Alternatively, the trial judge ruled that even if the revocation was effective, plaintiff's continued use of the machines after the revocation was wrongful against the seller and barred the remedy of rescission, N.J.S.A. 12A:2-602(2)(a). The judge further held that the exercise of such ownership bound the plaintiff to its acceptance *256 and constituted a waiver of all warranties or breaches thereof. Moreover, the trial judge ruled that plaintiff's election of the remedy of rescission barred it from seeking damages on a benefit of the bargain basis. Finally, the judge dismissed the count alleging fraudulent misrepresentations on the theory that since the remedies for fraud and nonfraudulent breach are co-extensive then, where plaintiff's acceptance and continued use of goods after a purported revocation barred a claim for damages arising out of a possible breach of warranty, these same facts barred any claim for damages arising out of fraudulent misrepresentations.
There is no question but that the buyer in the present case accepted the goods as he retained the machines in spite of their nonconformity. N.J.S.A. 12A:2-606(1)(a). However, the Uniform Commercial Code also provides that a buyer may revoke his acceptance within a reasonable time where the nonconformity of the goods substantially impairs their value to him. N.J.S.A. 12A:2-608.
In the case at bar the trial judge ruled that a two-year delay was unreasonable as a matter of law. We disagree. N.J.S.A. 12A:1-204 provides that reasonableness in connection with the time within which action is taken depends on the nature, purpose and circumstances of such action. Thus, whether the buyer has lost the right to revoke his acceptance is a question of fact to be determined by the trier of fact. See 2 Anderson, Uniform Commercial Code  Text, Cases, Commentary (2d ed. 1971), at 242.
In the present case the facts indicate that seller did attempt to remedy the defects in these machines on numerous occasions. Defendant-seller's conduct in this regard may have reasonably induced the buyer to continue to use the goods and to make payments in the belief that the defects complained of would be cured by these repairs. This question is clearly for a jury to decide as N.J.S.A. 12A:2-608 does not set forth any hard and fast rule as to whether a revocation is timely. Rather, what is a reasonable time in this context is a matter of fact to be determined by a jury *257 under the particular circumstances of the case. Trailmobile Division of Pullman, Inc. v. Jones, 118 Ga. App. 472, 164 S.E.2d 346, 348 (App. Ct. 1969). Conceivably a jury might conclude that the plaintiff-buyer was lulled into inaction by the attempts of defendant to repair the machines and that the subsequent revocation more than two years later was reasonable under these circumstances.
A further question is presented as to whether plaintiff Fablok's continued use of the machines after revocation constitutes a waiver of or bar to the remedy of rescission. The Code provides that a buyer who revokes acceptance has the same rights and duties with regard to the goods involved as if he had rejected them. N.J.S.A. 12A:2-608 (3). Thus, if the seller gives no instructions within a reasonable time after notification of rejection the buyer may (1) store the rejected goods for the seller's account; or (2) reship them to the seller; or (3) resell them for the seller's account. (N.J.S.A. 12A:2-604) In the present case the buyer continued to use the goods, and arguably his conduct was wrongful against the seller and constituted a waiver of revocation. Undoubtedly under the pre-Code law rescission was barred where the buyer continued to use the goods. Kelleher v. Detroit Motors, 52 N.J. Super. 247 (App. Div. 1958); Walter E. Heller & Company v. Hammond, 52 N.J. Super. 332 (App. Div. 1958), mod. 29 N.J. 589 (1959). However the Uniform Comment to this section of the Code (N.J.S.A. 12A:2-604) declares that the purpose of this section is
* * * to accord all reasonable leeway to a rightfully rejecting buyer acting in good faith. The listing of what the buyer may do in the absence of instructions from the seller is intended to be not exhaustive but merely illustrative.
Furthermore, avoidance of an absolute rule against continued use is counseled by the overriding requirement of reasonableness which permeates the Code. We conceive that in certain situations continued use of goods by the buyer may be *258 the most appropriate means of achieving mitigation, i.e., where the buyer is unable to purchase a suitable substitute for the goods. An analogous problem confronted the court in Minsel v. El Rancho Mobile Home Center, Inc., 32 Mich. App. 10, 188 N.W. 2d 9 (App. Ct. 1971). In Minsel the buyer sought rescission of a contract for the purchase of a mobile home. Plaintiff purchased the mobile home on July 16, 1968 and actually moved into it on or about July 28 of the same year. The defendant seller failed to remedy numerous defects and plaintiffs tendered notice of their intent to rescind the contract on September 11, 1968. Plaintiff decided to move out of the trailer but encountered difficulty in finding another place to live. As a result, plaintiff did not vacate the mobile home until November 1, 1968, nearly six weeks after revocation. 188 N.W.2d at 10. The court ruled that the continued use of the goods by plaintiff subsequent to the notice of rescission did not negate the claim of revocation of acceptance where the defendants failed (1) to contact plaintiffs in connection with the removal, (2) to show how the delay prejudiced them, (3) to show that the delay could have been avoided. (188 N.W.2d at 11-12) In the present case it appears the defendant seller failed to contact the buyer concerning removal. In addition, defendant does not show how the continued use resulted in prejudice. Furthermore, defendant does not suggest that plaintiff acted in bad faith or that the continued use could have been avoided. To the contrary, it appears that defendant-seller was the only domestic manufacturer of these particular types of machines and that plaintiff-buyer was confronted with the grim choice of either continuing to use some of the machines or going out of business. Thus, to hold, as a matter of law, that the buyer in these circumstances was required to discontinue his use of the goods and destroy his entire business would be contrary to the Code's rule of reasonableness and its underlying purposes and policies. We again conclude that the reasonableness of plaintiff's continued use of the machines, after *259 revocation, is a question of fact to be resolved by a jury referable to the issue of waiver.
The trial court also ruled that the continued use of the goods amounted to a waiver of any claim for breach of warranties. We disagree. N.J.S.A. 12A:2-714(1) permits a buyer who has accepted goods to obtain damages for any breach of warranty. This point is made explicit by N.J.S.A. 12A:2-607(2) which provides that acceptance precludes rejection of goods but "does not of itself impair any other remedy provided by this chapter for non-conformity." In this connection we decline to follow the decision, relied upon by the trial court, in Ingle v. Marked Tree Equipment Co., 244 Ark. 1166, 428 S.W.2d 286 (1968).
Defendant asserts that no warranties exist. While this contention was not raised below, we feel it deserves comment in view of our ultimate decision. The existence of express warranties appears to be precluded by the blanket disclaimer on the sales form here employed. However, this clause negating express oral warranties may be inoperative under N.J.S.A. 12A:2-316 inasmuch as oral statements are effectively obliterated by such a disclaimer only if the parol evidence offered is inconsistent with the disclaimer. Comment, Uniform Commercial Code, N.J.S.A. 12A:2-202, N.J.S.A. 12A:2-316. Likewise, as regards the warranty of fitness for the use intended, the sales form used appears to fall short of the conspicuous writing requirement of N.J.S.A. 12A:2-316(2). Thus, the disclaimer may be inoperative in this respect. Also, to disclaim the warranty of merchantability, the disclaimer must mention merchantability, and this disclaimer does not. N.J.S.A. 12A:2-316(2). Although a disclaimer avoiding the warranty of merchantability may be oral, defendant has made no allegation that an oral disclaimer was in fact made. In sum, fact issues are clearly present as to the existence of warranties.
We believe the trial judge erred in concluding that plaintiff waived the remedy of damages for breach by *260 seeking a return of the purchase price. When the trial court rejected the claim for the return of the purchase price (rescission) under N.J.S.A. 12A:2-711 there still remained a count seeking damages as computed on a value received basis. N.J.S.A. 12A:2-714. Rescission and damages are alternative remedies, and unless a contrary intention clearly appears, an action for rescission may not be construed as a renunciation of any claim for damages. N.J.S.A. 12A:2-720 provides:
Unless the contrary intention clearly appears, expressions of `cancellation' or `rescission' of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach.
However, once recovery is permitted either through rescission or by way of damages, the alternative remedy must be dropped. Walter E. Heller & Co., v. Hammond, supra, at 337 of 52 N.J. Super. Therefore, the defense of fatal election of remedy must fail in this case since there was no conscious choice by plaintiff to elect rescission to the exclusion of damages. Ray v. Beneficial Finance Co., 92 N.J. Super. 519 (Ch. Div. 1966).
The trial judge concluded that waiver of the warranty action also amounted to a waiver of the claim based on fraud since the remedies for fraud and breach of warranty are co-extensive under the code. As previously noted, the trial judge was mistaken in his conclusion that plaintiff's initial reliance on the remedy of rescission served to bar the warranty counts of the complaint. N.J.S.A. 12A:2-607(2), N.J.S.A. 12A:2-714. Thus, insofar as the striking of the fraud claim was premised on the invalidity of the warranty claim, the fraud claim was improperly held nugatory. The trial judge read N.J.S.A. 12A:2-720 and N.J.S.A. 12A:2-721 as making fraud and warranty remedies co-extensive. The latter section of the Code does indeed overturn the common law rules by which the remedies for fraud had *261 been more circumscribed than the modern remedy for breach of warranty. See Comment to § 2-721, Uniform Commercial Code. However, contrary to the trial judge's opinion, this section does not limit fraud claims where efforts to rescind have met with failure. The intendment of § 2-720 and § 2-721 was to insure that reliance on the remedy of rescission would not serve as a bar to a claim for damages or other remedy. In any event, there was no genuine issue as to any material fact in connection with the claim for fraud. The only proof of fraud presented by Fablok was contained in its pleadings, which was rebutted by defendant Cocker's uncontradicted affidavits. The trial judge therefore properly granted summary judgment in favor of defendant Cocker on the fraud claim. Rankin v. Sowinski, 119 N.J. Super. 393, 399-400 (App. Div. 1972).
We now deal with questions raised by defendant Cocker's cross-appeal. They concern rulings made prior to the grant of motion for summary judgment in favor of defendant. Defendant contends that the trial court erred in vacating its prior order dismissing plaintiff's complaint for failure to answer interrogatories in that there was noncompliance with R. 4:23-5 (payment of a $50 fee to the county clerk). The fact of nonpayment is not disputed by plaintiff. However, we decline to dismiss at this juncture because where noncompliance with the rules can be remedied by other measures, dismissal ordinarily will not be required. Savoia v. F.W. Woolworth Co., 88 N.J. Super. 153 (App. Div. 1965). Plaintiff is hereby ordered to pay $50 to the county clerk.
Defendant also argues that the trial court, on its first motion for summary judgment, should have dismissed the action as to the first four machines which were purchased. The instant suit, concerning the ten machines, was instituted on February 18, 1969. The first two machines were delivered on September 15, 1964. Two more were delivered on November *262 17, 1964. All the other machines were received by Fablok after February 18, 1965.
The statute of limitations concerning sales transactions is set forth in N.J.S.A. 12A:2-725 as follows:
(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued * * *.
(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. [Emphasis added]
In the present case it is clear that no warranty explicitly extended to future performance. It is equally clear that the discovery of the breach as to the first four machines need not have awaited the future performance as to the other six machines. The defects in the first four machines became apparent within several weeks of their arrival. Plaintiff failed to institute suit within four years of the date of delivery and is therefore barred from suit as to these four machines. It may be argued that defendant's attempts to cure the defects had the effect of tolling the statute of limitations. The only reported decision which we have found on this point, Binkley Co. v. Teledyne Mid-America Corp., 333 F. Supp. 1183, 1187 (D.C. Mo. 1971), aff'd 460 F.2d 276 (8 Cir.1972), holds that under Missouri law attempts to repair do not toll the operation of § 2-725 of the Code. However, even assuming that the repair attempts did toll the statute of limitations, plaintiff's subsequent lack of diligence bars plaintiff from relying on such a theory. Plaintiff's rescission letter was written on May 23, 1967, 16 months before the expiration of the statute of limitations as to the first machine delivered. Instead of instituting suit within this period, plaintiff waited until February 2, 1969, nearly 21 months after it sought to rescind. This inexcusable delay *263 bars plaintiff from relying on defendant's conduct as a defense to the statute of limitations. See generally, Annotation, "Plaintiff's Diligence as Affecting His Right to Have Defendant Estopped from Pleading the Statute of Limitations," 44 A.L.R. 3d 760, 764 (1972).
The decision of the trial court is reversed and, consistent with the foregoing, the matter is remanded for a new trial. The new trial shall exclude claims relating to the four machines.