Rex LAWRENCE, Appellant,

v.

**MODERN MOBILE HOMES,
INC., Respondent.**

**No. KCD 28677.**

Missouri Court of Appeals,
Kansas City District.

Jan. 30, 1978.

Motion for Rehearing and/or Transfer
Denied Feb. 27, 1978.

S. W. Longan, III, Daniel J. Flanigan,
Kansas City, for appellant; Logan, Alder,
Wilson & Epstein, Kansas City, of counsel.

Carl A. Hummel, Harlan D. Burkhead,
Kansas City, for respondent; Lathrop,
Koontz, Righter, Clagett, Parker & Nor-
quist, Kansas City, of counsel.

Before PRITCHARD, P. J., SWOFFORD,
C. J., and DIXON, J.

PRITCHARD, Presiding Judge.

Appellant's action against respondent
was for a revocation of acceptance ("rescis-
sion") of his purchase of a mobile home
because of alleged defects therein. The
trial court denied him the relief prayed for
except for an allowance it found to have
been expended by him in the amount of
$56.00 for repairs to the home.

The dispositive issue is whether appel-
lant's continued use, under all the facts and
circumstances, bars him from obtaining the
requested relief.

The facts are these, as presented solely
by appellant, respondent having presented
no evidence: Before purchasing the mobile
home on January 29, 1973, and signing a
retail installment contract and a security
agreement, appellant on three occasions
looked at homes on respondent's lots. Be-
cause the homes were parked closely to-
gether, he was unable to inspect the out-
side. It was dusk each time he looked at
the homes, and the only light inside was a
single bulb. Respondent's salesman told
appellant that "the Van Dyke Guerdon was
the best trailer that Guerdon Industries

made." The home was delivered to appellant's lot by respondent, on February 2, 1973, and he moved into it three days later. On February 29, 1973, he complained about dents on the outside of the home, and a dented sink, and an employee of respondent came to look at it, telling him that new parts would have to be ordered. Respondent did install a new front panel in late March, 1973, at which time appellant made complaints about other defects, and the employee assured him they would be repaired.

Appellant's evidence showed many defects in the mobile home, but it is unnecessary to set them forth. The trial court observed, "I don't think that there's any contest that there's some defects in this mobile home; and I don't have any problem in determining that there were some things that were not done right."

The complaints of appellant to respondent continued until September, 1973, during which time respondent told him that the parts had been ordered for 5 to 7 months, but had not come in. In April, 1973, appellant asked respondent to take back the home, but was told that it did not want it back and for him to contact Guerdon Industries. Appellant's wife, Paula Diane Lawrence, asked Guerdon to pick up the home in June, 1973, and was told to contact the bank and see what could be done. Twice, in August, 1973, appellant tried to get respondent to take the home back, but it denied the requests. Appellant, in September, 1973, directed his attorney to tender the mobile home in its existing condition to respondent, and to demand a rescission of the sales contract. Within several days thereafter, respondent's Mr. Frye called appellant and told him he had the parts, and that they would come out and fix everything that was wrong with the trailer. "And I told him over the phone that on the advice of my lawyer, that I would not have any more warranty work or anything done to the trailer."

The trial court was not requested to, nor did it make, findings of fact and conclusions of law. At the outset of the trial, the court, however, remarked, " * * * [B]ut I thought it was pretty definite about if you use something you waive any right to rescind", and "[B]ut to rescind I think generally you have to turn it back in the shape you got it; because if you use it, then you've waived the *recision* part. You wouldn't *wave*, perhaps, damages; but you can't turn your bargain back." The court expressly found against appellant on the issue of rescission. Appellant contends that the court erred in finding as a matter of law that he had waived the right to revoke his acceptance by continued use of the mobile home. Respondent contends that the use after notice of revocation of acceptance is a waiver of the buyer's right to revoke as a matter of law. The issue presented is governed by the Uniform Commercial Code, as adopted in this state. § 400.2–608, RSMo 1969, provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to goods involved as if he had rejected them."

■ The evidence submitted by appellant shows defects in the mobile home which amount to nonconformity substantially impairing its value to him after he accepted it. Not only was appellant reasonably entitled to assume that the nonconformity (defects) would be cured because of respondent's re-

peated assurances that repairs would be made, it is also apparent that from February through September, 1973, on up to the time suit was filed in 1974, the curing repairs were not (and were never) seasonably made. Furthermore, under the evidence, as he originally inspected the home, any defects were difficult of discovery because of darkness and the closely parked homes, and he was assured that it was the best trailer made by Guerdon Industries.

Respondent had knowledge of the defects or nonconformity in the mobile home through appellant's repeated oral requests up to September, 1973, when he directed his attorney to tender the mobile home in its existing condition and to demand a rescission. The attorney's copy of a letter, although marked as Exhibit 92, was not received in evidence, but on January 16, 1974, appellant's action was filed. Apparently, appellant made 34 monthly payments on the installment note after March 1, 1973, to the Iowa State Savings Bank, Clinton, Iowa, and he remained in possession of the mobile home at all times. Trial began before the court, a jury having been waived, on January 19, 1976.

The Uniform Commercial Code was adopted in Missouri in 1963, Chapter 400, RSMo 1969. The cases relied upon by respondent, and apparently by the trial court, are pre-code decisions holding that continued use of goods by a buyer constitutes a waiver of his right to revoke acceptance (rescission). Such were the holdings of *Aeolian Co. of Missouri v. Boyd*, 65 S.W.2d 111, 114[6] (Mo.App.1933); and *Brandtjen & Kluge v. Burd & Fletcher Co.*, 239 S.W.2d 651, 192 S.W.2d 651, 659 (1946). One case, in dicta, seemingly follows the foregoing two cases: *Stephens Industries, Inc. v. American Express Co.*, 471 S.W.2d 501 (Mo. App.1971), which was decided after the adoption of UCC in this state. In *Stephens*, the seller sued to recover the contract price of a machine and the buyer counterclaimed for "rescission." The court held that from the evidence, it could not be found that the machine did not conform to the buyer's specifications or that it was in any way defective so as to justify the buyer in rejecting it. This holding would have been a sufficient basis for the opinion under § 400.-2–608(1) (not cited by the *Stephens* court), which requires a "nonconformity which substantially impairs its value" found to be lacking by the *Stephens* court. The opinion, loc. cit. 471 S.W.2d 506[10], goes on to say that even assuming the machine was defective, under the facts, the buyer had a reasonable time to determine whether or not the machine was defective and to reject it which the buyer did not do. This is a further basis for the decision, under § 400.-2–602(1), and that decision on either or both grounds obviously reaches the correct result. At page 505[7, 8] of the opinion, it is set forth by way of dicta, "If, after a proper rejection and rescission, the buyer then uses the goods as his own and in a manner inconsistent with the rights of the seller, such use nullifies the rescission and constitutes an acceptance of the goods as in fulfillment of the contract and the buyer is liable for the price. (Citing, among others, the *Aeolian* case, supra.)" Under the provisions of the UCC, and the cases construing it [although none have been cited or found in this state], discussed, infra, that rule is no longer hard and fast and is not to be applied as a matter of law to bar revocation of acceptance. § 400.2–608(3) provides that "A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

§ 400.2–602(2)(a) provides, "after rejection [revocation of acceptance] any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller"; and "(b) if the buyer has before rejection [revocation of acceptance] taken physical possession of goods *in which he does not have a security interest* under the provisions of this Article * * *, he is under a duty after rejection [revocation of acceptance] to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; * * *." [Brackets and italics added.]

§ 400.2–711(3) expressly grants to a buyer a security interest in this language: "On

rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (section 400.2–706)." Cases from other jurisdictions have construed this buyer's security interest provision. In *Jones v. Abriani*, 350 N.E.2d 635 (Ind.App.1976), the buyers sued to "rescind" the purchase of a mobile home. The court held that Abriani had a security interest in the goods [under UCC] for the amount of the purchase price paid, and noted that the official comments to UCC, § 2–711(3), said that the price "paid" included the signing of a negotiable note [as is the case here]. Abriani had a right of possession under this section until their note was returned to them, although they had no right to use the goods, unless it could be found that the use helped to preserve the goods through continued care as was the case in the there cited case of *Minsel v. El Rancho Mobile Home Center, Inc.*, 32 Mich. App. 10, 188 N.W.2d 9 (1971). A contention was made in *Jorgensen v. Pressnal*, 274 Or. 285, 545 P.2d 1382 (Or. banc 1976), that the buyer could not rescind because of his use of the goods after notice of rescission. The court held that the buyer was entitled to remain in possession to preserve the collateral of his security interest, noting also that one of the major defects in the mobile home was a leaky roof [the evidence here is that the mobile home roof leaked water down between its walls] and that the continued occupancy was the most feasible method of protecting it. The court in *Jorgensen* did permit a set-off of the reasonable rental value of the home against the damages owed the buyer by the seller. As to the existence of the security interest in buyer for the purchase price paid, see also *Frontier Mobile Home Sales, Inc. v. Trigleth*, 256 Ark. 101, 505 S.W.2d 516 (1974); and *Irrigation Motor and Pump Co. v. Belcher*, 29 Colo.App. 343, 483 P.2d 980 (1971).

Another case allowing a reasonable value for set-off for buyer's wrongful use (so held) of a mobile home after notification of revocation of acceptance, is *Stroh v. American Recreation and Mobile Home Corp.*, 35 Colo.App. 196, 530 P.2d 989 (1975), the court noting that the UCC did not provide specifically for a set-off for wrongful use, but that since UCC, § 1–103, provides that precode law should supplement the UCC, unless inconsistent therewith, the buyer was liable for the fair and reasonable value of that use. See also *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227 (Tenn. App.1972); and *Pedrini v. Mid-City Trailer Depot, Inc.*, 1 Wash.App. 56, 459 P.2d 76 (1969), likewise allowing a set-off.

In this case, respondent contends that appellant did not effectively notify it of his revocation of acceptance, and that he refused to let respondent make repairs. The record shows that appellant notified respondent of defects within a short time after delivery and several times thereafter, yet it did not seasonably make repairs. The refusal to allow respondent to make the repairs came after appellant was advised by his attorney not to do so, after which, significantly, the repair parts became available. This situation is similar to that in the *Jorgensen* case, supra, where the seller assured the buyers that the repairs would be made, but none were, and they turned the case over to their attorney who advised them not to permit repairs. The court rejected the seller's contention that the buyers could not rescind because they had refused to permit repairs, saying that the seller did not act seasonably, and that a seller does not have an unlimited time to make repairs. See discussion of seller's assurances as justifying delay in revoking acceptance, 65 A.L.R.3d 354, 361; and 8 U.C.C.L.J. 14, 20 (1975).

Here, also, it is apparent that respondent never attempted to move or take possession of the mobile home after notice of revocation of acceptance by appellant. In *Garfinkel v. Lehman Floor Covering Co.*, 60 Misc.2d 72, 302 N.Y.S.2d 167 (Dist.Ct.1969), the court gave judgment for the buyer of carpet upon his suit to revoke its purchase, and where he continued to use it, as at-

tached to the floor, after he gave notice to revoke. The trial court said, 60 Misc.2d 72, at loc. cit. 302 N.Y.S.2d 169, "[Seller] delivered the goods and it is fair that he should remove them or let them remain at his peril." In the *Minsel* case, supra, the buyer used the home for six weeks after he gave notice of his intent to revoke, but the seller never attempted to remove it, and did not show how the buyer's delay in moving out prejudiced seller, who contended waiver of the right to revoke. 32 Mich.App. 10, at loc. cit. 188 N.W.2d 12, the court said, " * * * [A] rule of reason should prevail", and that to apply seller's contention " * * * would be contrary to the 'rule of reasonableness' evident throughout the UCC", 32 Mich.App. 10, at loc. cit. 188 N.W.2d 11. It was further held in *Minsel* that the burden of proof was upon seller to show how buyer's continued use damaged it. See also *Fablock Mills, Inc. v. Cocker Machine & Foundry Co.*, 125 N.J.Super. 251, 310 A.2d 491 (1973), cert. denied, 64 N.J. 317, 315 A.2d 405 (1973), for a like holding on the burden of proof, and a further iteration of "the overriding requirement of reasonableness which permeates the code" in avoidance of an absolute rule against continued use. See Anno. "Buyer's Use of Goods as Acceptance", 67 A.L.R.3d 363; 27 Rutgers L.Rev. 763 (1974); and 24 Drake L.Rev. 52 (1974).

■ For the foregoing reasons, it must be concluded that the trial court erred in giving judgment against appellant upon the basis of his continued use of the mobile home after notice of revocation of acceptance. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Appellant has briefed a point that the trial court erred in excluding his testimony as to his income, apparently as those facts might bear upon his continued use of the mobile home. It is unnecessary to rule the point at this time because, should the matter come up in retrial, the parties have adequately briefed the matter and may be guided accordingly. As to respondent's point that appellant was not entitled to revoke acceptance because he could not re-

store the parties to their respective positions because the lienholder on the mobile home (Iowa State Savings Bank, Clinton, Iowa) was not made a party, the only evidence of that bank's interest came from appellant, who testified that he made payments to it. Nothing was shown as to its relation to respondent, or by what means it became possessed of the installment note and security interest. Should the parties deem it advisable to add the bank as a party needed for just adjudication (Rule 52.04), that matter may be addressed anew to the trial court.

Upon new trial, respondent should be allowed to plead a set-off for the reasonable value of appellant's continued use, to be applied should appellant then prevail.

The judgment is reversed and the case is remanded for new trial.

All concur.