818 A.2d 448 (2003)
358 N.J. Super. 512
Carlos A. CUESTA, Plaintiff/Appellant,
v.
CLASSIC WHEELS, INC., Defendant/Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 2003.
Decided March 21, 2003.
*449 Robert M. Rich, Verona, argued the cause for appellant.
Anthony M. Prieto argued the cause for respondent (Prieto & Cohen, attorneys; Mr. Prieto, on the brief).
Before Judges PRESSLER, WALLACE, JR. and AXELRAD.
The opinion of the court was delivered by WALLACE, JR., J.A.D.
Plaintiff Carlos Cuesta appeals from a judgment entered in connection with the complaint he filed against defendant Classic Wheels, Inc., alleging, in part, violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to 106 (the Act). The trial court found that, although defendant violated the Act, plaintiff failed to establish damages. Consequently, the trial court dismissed the complaint. On appeal, plaintiff essentially contends he revoked acceptance pursuant to the Uniform Commercial Code and defendant's violation of the Act entitled him to an award of damages. We reverse.
The parties waived a jury trial. The evidence before the trial court showed that plaintiff visited defendant's dealership concerning the purchase or lease of a vehicle in November 1993. Plaintiff ultimately agreed to acquire a 1988 Corvette. Defendant represented to plaintiff that the vehicle had been driven 59,586 miles and gave plaintiff a certified statement to that effect. Plaintiff discussed the financing and cost of the vehicle and was advised that defendant would provide him with financing through an automobile lease. Plaintiff made a deposit of $4,000 and agreed to make lease payments of $266 a month. The lease was actually between plaintiff, as lessee, and Onyx Leasing System, Inc., as lessor.[1]
Four days later, plaintiff's Corvette would not start, and he had it towed to a repair shop. The mechanic showed plaintiff that by striking the top of the dashboard, the numbers in the odometer started moving, indicating a defect in the odometer. Plaintiff also noted scratches on the inside of the odometer. The mechanic informed him that an alternator was needed to repair the vehicle. Plaintiff agreed and paid for the repair.
Plaintiff immediately sought to return the vehicle to defendant. While returning the vehicle, plaintiff noticed that several of the odometer numbers moved backwards *450 or did not move at all. Plaintiff returned the vehicle and requested a refund of his payment of $4,000 in exchange for defendant taking the car back. Defendant refused but stated he would sell plaintiff another vehicle. This was unacceptable to plaintiff. He eventually left with the Corvette.
Plaintiff attempted to testify concerning the amount of time he was unable to use the Corvette due to its condition, but the trial court sustained an objection to that line of testimony because the sole defect alleged in the complaint was the altered odometer. Plaintiff asserted that he used the vehicle for approximately two years and made the lease payments until he filed a petition in bankruptcy. The vehicle was then reclaimed by the lessor.
Plaintiff presented Gregory Kimbaris, a certified Class A mechanic, as his expert. Kimbaris testified he examined the odometer of plaintiff's Corvette in early 1994. He said the numbers moved when he tapped the dashboard. Kimbaris explained that detents in the odometer numbers hold them in place and that after he opened up the instrument cluster, he noticed a scratch on the odometer where somebody used a sharp instrument to move the numbers. The numbers could be moved up and down because the detents were no longer holding them in place. Kimbaris opined that the odometer was grossly tampered with by a non-professional and the degree of tampering would have been noticeable to a car dealer. Kimbaris also believed the car was a clip car, a term used in the industry to describe a car damaged to the extent that it cannot be repaired, so the vehicle is cut in half and joined with another vehicle. In his opinion, the vehicle had traveled over 100,000 miles.
John Patel, the owner of defendant, denied having any knowledge that someone tampered with the odometer. Patel recalled that plaintiff returned the car to have the alternator repaired, but he denied plaintiff complained about the odometer. On cross-examination, Patel acknowledged that it was possible he received a copy of a letter from Mr. Dinardi of Onyx Leasing with regard to plaintiff's complaints about the odometer.
The trial court credited Kimbaris's testimony and found that plaintiff amply demonstrated defendant violated the Act by misrepresenting the mileage on the vehicle with either actual or constructive knowledge that the mileage was other than as certified. The court found the statute of limitations had expired under the Federal Odometer Statute and turned to the issue of damages under the Act. The court found that plaintiff's proofs failed to show what, if any, mechanical problems in the vehicle were caused by the excess mileage. The court concluded that plaintiff's failure to produce evidence of the fair market value of a vehicle with more than 100,000 miles, as compared to a vehicle with 59,000 miles, was a failure to establish damages and, accordingly, dismissed plaintiff's complaint. Plaintiff moved for reconsideration. He argued he properly rejected the vehicle under the Uniform Commercial Code (Code), and it was defendant's obligation to take the vehicle back. He claimed damages in the total amount of payments he made under the lease. The court rejected this argument and denied reconsideration. This appeal followed.

I
Plaintiff asserts that he properly revoked acceptance of the vehicle and he is entitled to treble damages under the Act.
Initially, we note that although plaintiff presented evidence at trial that he revoked acceptance of the Corvette, he did not *451 expressly refer to revocation under the Code until his motion for reconsideration. Defendant contends this argument was raised too late to aid plaintiff's case. We disagree.
R. 4:9-2 authorizes amendments of pleadings to conform to the evidence at trial and provides that failure "to amend [the pleadings] shall not affect the result of the trial of these issues." Ibid. The "`broad power of amendment should be liberally exercised at any stage of the proceedings, including on remand after appeal, unless undue prejudice would result.'" Kernan v. One Washington Park, 154 N.J. 437, 457, 713 A.2d 411 (1998) (quoting Pressler, Current N.J. Court Rules, comment on R. 4:9-1 (1998)).
Here, plaintiff clearly presented evidence to show that approximately four days after he acquired the Corvette, he discovered the mileage on the odometer was incorrect. He then sought to return the vehicle in exchange for the money he had paid, but defendant refused.
Thus, the evidence clearly supported plaintiff's claim that he revoked acceptance. On the motion for reconsideration, plaintiff asserted that he rejected acceptance pursuant to the Code. Moreover, the trial court considered plaintiff's argument under the Code but rejected it because plaintiff had not "addressed the issue of how damages are measured under the Uniform Commercial Code." Thus, plaintiff's evidence and arguments, when liberally construed, clearly raised the issue of revocation of acceptance under the Code.

II
We turn now to plaintiff's assertion that his revocation of acceptance of the Corvette entitles him to treble damages under the Act. Specifically, he contends the amounts paid by him under the lease form the basis of his damages claim.
The Code provides that a buyer may revoke acceptance of goods where the "non-conformity substantially impairs its value." N.J.S.A. 12A:2-608. Revocation of acceptance occurs after the buyer accepts the goods but "is intended to provide the same relief as rescission of a contract of sale of goods." Ramirez v. Autosport, 88 N.J. 277, 288, 440 A.2d 1345 (1982) (citing N.J.S.A. 12A:2-608 Official Comment 1; N.J. Study Comment 2). Thus revocation of acceptance is tantamount to rescission. Ramirez, supra, 88 N.J. at 288, 440 A.2d 1345. That is, a buyer who revokes has the "same rights and duties with regard to the goods involved as if he had rejected them." N.J.S.A. 12A:2-608(3). Further, revocation of acceptance must occur within a reasonable time. N.J.S.A. 12A:2-608(2).
The remedies available to the buyer who justifiably revokes acceptance of the goods are set forth in N.J.S.A. 12A:2-711. One of the remedies is cancellation of the contract and recovery of "so much of the price as has been paid." N.J.S.A. 12A:2-711(1). The Code also permits the seller to cure imperfect tenders. N.J.S.A. 12A:2-508. If the seller fails "to cure the defects, whether substantial or not, the balance shifts again in favor of the buyer, who has the right to cancel or seek damages." Ramirez, supra, 88 N.J. at 290, 440 A.2d 1345.
Here, the defect was not capable of being cured. Defendant certified the mileage on the Corvette was 59,589. Plaintiff presented evidence, and the trial court agreed, that the actual mileage on the vehicle exceeded 100,000 miles. Clearly, the non-conformity of the odometer reading substantially impaired the value of the Corvette, and plaintiff was entitled to revoke *452 acceptance of the vehicle. See Ramirez, supra, 88 N.J. at 288-90, 440 A.2d 1345.
We agree with the trial court that the record lacks any proof of damages based on the difference between the purchase price of the Corvette and the market value of the Corvette with the excess mileage. Despite that deficiency, once the trial court found that defendant's conduct violated the Act because defendant affirmatively misrepresented the mileage and did so with either actual or constructive knowledge that the mileage was other than as represented, plaintiff was entitled to recover damages under the Act.

III
The question remains as to the damages plaintiff is entitled to receive where defendant wrongfully refused plaintiff's attempt to revoke acceptance and plaintiff retained the use of the vehicle. The issue is whether plaintiff's continued use of the Corvette after revocation constitutes a waiver of or a bar to the remedy of rescission.
The Code provides that a buyer who revokes acceptance "has the same rights and duties with regard to the goods involved as if he had rejected them." N.J.S.A. 12A:2-608(3). Once a buyer gives notification of rejection, if the seller offers no instructions within a reasonable time, the buyer may (1) store the rejected goods for the seller's account; (2) reship the goods to the seller; or (3) resell them for seller's account. N.J.S.A. 12A:2-604. Fablok Mills v. Cocker Machine & Foundry Co., 125 N.J.Super. 251, 257, 310 A.2d 491 (App.Div.1973).
In Fablok Mills, the court addressed whether a buyer's continued use of the machines after revocation barred rescission. The court noted that, under pre-code law, continued use of the goods after revocation would bar rescission. However, a different result is possible under the Code, and the court found that the "reasonableness of [buyer's] continued use of the machines, after revocation, is a question of fact to be resolved by a jury referable to the issue of waiver." Id. at 258-59, 310 A.2d 491. The court explained:
... the Uniform Comment to this section of the Code (N.J.S.A. 12A:2-604) declares that the purpose of this section is
... to accord all reasonable leeway to a rightfully rejecting buyer acting in good faith. The listing of what the buyer may do in the absence of instructions from the seller is intended to be not exhaustive but merely illustrative.
Furthermore avoidance of an absolute rule against continued use is counseled by the overriding requirement of reasonableness which permeates the Code. We conceive that in certain situations continued use of goods by the buyer may be the most appropriate means of achieving mitigation, i.e. where the buyer is unable to purchase a suitable substitute for the goods.
[Id. at 257, 310 A.2d 491. See also, Mercedes-Benz Credit Corp. v. Lotito, 328 N.J.Super. 491, 506, 746 A.2d 480 (App.Div.2000)("Whether the continued use is reasonable or not is a matter for the finder of fact.") ]
Other state courts have similarly held that whether the continued use of goods following a failed revocation of acceptance bars the buyer from a recovery depends upon whether such use was reasonable or not. See McCullough v. Bill Swad Chrysler-Plymouth Inc., 5 Ohio St.3d 181, 449 N.E.2d 1289 (1983); Johannsen v. Minnesota Valley Ford Tractor Co. Inc., 304 N.W.2d 654 (Minn.1981); O'Shea v. Hatch, 97 N.M. 409, 640 P.2d 515 (App.1982); *453 Mobile Home Sales Mgmt., Inc. v. Brown, 115 Ariz. 11, 562 P.2d 1378 (App.1977); Uganski v. Little Giant Crane & Shovel, Inc., 35 Mich.App. 88, 192 N.W.2d 580 (1971).
The McCullough case is instructive. In that case, plaintiff sought rescission of an automobile she purchased on May 23, 1978. Plaintiff returned the vehicle for numerous repairs during the balance of 1978. Despite defendant's efforts to repair the vehicle, it continued to malfunction. On January 8, 1979, plaintiff wrote to defendant seeking rescission and demanding a refund of the purchase price. Defendant did not respond to the letter and plaintiff continued to use the vehicle. Plaintiff filed suit against defendant. By the time of trial, plaintiff had driven the vehicle nearly 35,000 miles, of which approximately 23,000 were driven after plaintiff gave notice of revocation. The Ohio Supreme Court held that whether plaintiff's use of the vehicle was reasonable was a question to be determined by the trier of fact. The Court explained that
"[t]he genesis of the `reasonableness use' test lies in the recognition that frequently a buyer, after revoking his earlier acceptance of a good, is constrained by exogenous circumstancesmany of which the seller controlsto continue using the good until a suitable replacement may realistically be secured .... [and] to penalize the buyer for a predicament not of his own creation would be patently unjust."
[Id. at 184, 449 N.E.2d 1289].
Further, the Ohio Supreme Court suggested five questions the factfinder should answer to aid in the determination whether the use after revocation was reasonable: (1) upon notice of revocation, what instructions did the seller give the buyer concerning the goods? (2) Did the buyer's business needs or personal circumstances compel the continued use? (3) During the period of use by the buyer, did the seller assure the buyer that the defects would be cured or that provisions would be made to compensate the buyer for the inconvenience resulting from the defects? (4) Did the seller act in good faith? and (5) Was the seller unduly prejudiced by the buyer's continued use? Ibid. After considering these criteria, the Court in McCullough concluded that the buyer acted reasonably in continuing to operate her motor vehicle even after revocation of acceptance. Ibid.
We agree that the non-exhaustive criteria suggested by the Ohio Supreme Court are relevant for the factfinder to consider in determining whether plaintiff's continued use of the vehicle was reasonable. While we might exercise original jurisdiction and determine the issue of reasonableness, see R. 2:10-5, we think the better approach is to remand for the trial court to make that determination on an expanded record addressed to this issue. If plaintiff's continued use of the Corvette is found to be reasonable, the trial court must then determine damages. Where revocation is justifiable, a buyer may "recover so much of the purchase price as has been paid." GMAC v. Jankowitz, 216 N.J.Super. 313, 331, 523 A.2d 695 (App.Div.1987). Here, plaintiff presented evidence that he paid $4,000 as his initial payment and made $6,371 in lease payments. Thus, plaintiff satisfied his burden of proof as to damages. See N.J.S.A. 12A:2-715(1).
The Code is silent regarding any offset to defendant for plaintiff's use of the car. Plaintiff used the car for only a brief period of time prior to revocation. Obviously, seller or lessor would not be entitled to a credit for the value of the use prior to revocation, but the lease payments made after plaintiff's attempt at revocation failed and while plaintiff continued to use the *454 vehicle present different consideration. In a similar setting, while sitting in Chancery, Judge Furman concluded that general equitable principles apply to permit seller an offset. Pavesi v. Ford Motor Co., 155 N.J.Super. 373, 378-80, 382 A.2d 954 (Ch. Div.1978).
In our view, it would not be fair to permit plaintiff to use the Corvette for almost two years after he revoked acceptance without some offset. Defendant may be entitled to an offset for all or at least a part of the lease payments made by plaintiff after he sought revocation, but defendant must bear the burden of proof on that issue. Mercedes-Benz Credit Corp., supra, 328 N.J.Super. at 510, 746 A.2d 480 ("burden of proving the claimed offset for the value of use fairly belongs on the party in breach in these circumstances"). Defendant is in the business of selling and leasing cars and is in a far better position to submit evidence on the value of the use of the car by plaintiff.

IV
We raise one other issue not addressed by the parties. As noted, the trial court found that defendant violated the Act, and defendant did not appeal from that decision. Our review of the record satisfies us that there was substantial credible evidence for the trial court to reach that conclusion. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999). The purposes of the Act are "to compensate the victim for his or her actual loss; to punish the wrongdoer through the award of treble damages; and, by way of the counsel fee provision, to attract competent counsel." Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591 (1999). The Act is remedial legislation and should be liberally construed in favor of the consumer. Ibid.
Consistent with this approach, our Supreme Court held that "[a] consumer fraud plaintiff can recover reasonable attorney's fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454 (1994). This is because the "fundamental remedial purpose of the Act dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship." Id. at 25, 647 A.2d 454.
In the present case, once the trial court found that defendant committed an unlawful practice by affirmatively misrepresenting the mileage on the vehicle in violation of the Act, whether or not plaintiff proved any ascertainable loss, the court should have awarded plaintiff attorney's fees, filing fees, and costs of suit. Ibid. It was error for the court not to award these damages.

V
In summary, we affirm the determination that defendant violated the Act and remand for a new trial on damages. On remand, the trial court shall determine whether plaintiff's continued use of the vehicle after revocation of acceptance was reasonable and, if so, determine damages. Independent of that determination, plaintiff should be awarded attorney's fees, filing fees, and costs of suit.
Reversed.
NOTES
[1] The lease agreement is not part of the record on appeal. Nevertheless, it appears that Onyx Leasing System, Inc. is affiliated with defendant.