MᴄCᴜʟʟᴏᴜɢʜ, Aᴘᴘᴇʟʟᴇᴇ, *v.*
Bɪʟʟ Sᴡᴀᴅ Cʜʀʏsʟᴇʀ-Pʟʏᴍᴏᴜᴛʜ, Iɴᴄ., Aᴘᴘᴇʟʟᴀɴᴛ.

[Cite as McCullough *v.* Bill Swad Chrysler-Plymouth, Inc. (1983),
5 Ohio St. 3d 181.]

(No. 82-611—Decided June 22, 1983.)

*Mr. C. Lawrence Huddleston,* for appellee.
*Mr. Henry Maser,* for appellant.

LOCHER, J. The case at bar essentially poses but a single question: Whether appellee, by continuing to operate the vehicle she had purchased

from appellant after notifying the latter of her intent to rescind[1] the purchase agreement, waived her right to revoke her initial acceptance. After having thoroughly reviewed both the relevant facts in the present cause and the applicable law, we find that appellee, despite her extensive use of the car following her revocation, in no way forfeited such right.

The ultimate disposition of the instant action is governed primarily by R.C. 1302.66, which provides, in pertinent part:

"(A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

"(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; * * *
"* * *

"(B) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(C) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

Appellant essentially argues that appellee's revocation of her initial acceptance of the automobile was ineffective as it did not comply with the mode prescribed for revocation in R.C. 1302.66. Specifically, appellant asserts that appellee's continued operation of the vehicle after advising appellant of her revocation was inconsistent with her having relinquished ownership of the car,[2] that the value of the automobile to appellee was not substantially impaired by its alleged nonconformities, and that the warranties furnished by appellant provided the sole legal remedy for alleviating the automobile's defects. Each of appellant's contentions must be rejected.

Although the legal question presented in appellant's first objection is a novel one for this bench, other state courts which have addressed the issue have held that whether continued use of goods after notification of revocation of their acceptance vitiates such revocation is solely dependent upon whether such use was reasonable. See *Johannsen* v. *Minnesota Valley Ford Tractor Co.* (Minn. 1981), 304 N.W. 2d 654; *Pavesi* v. *Ford Motor Co.* (1978), 155 N.J. Super. 373, 382 A. 2d 954; *O'Shea* v. *Hatch* (1982), 97 N.M. 409, 640 P. 2d 515; *Mobile Homes Sales Mgmt., Inc.* v. *Brown* (1977), 115 Ariz. 11, 562 P. 2d 1378. Moreover, whether such use was reasonable is a question to be determined by the trier of fact. *Johannsen, supra; Uganski* v. *Little Giant Crane & Shovel, Inc.* (1971), 35 Mich. App. 88, 192 N.W. 2d 580.

---

[1] Under R.C. 1302.66, the rescission of a sales agreement is viewed as a revocation of acceptance of the good purchased through the agreement.

[2] R.C. 1302.66(C) requires that a buyer who revokes his acceptance must treat the subject goods as if he had rejected them pursuant to R.C. 1302.61. Under R.C. 1302.61(B)(1), a buyer's continued exercise of ownership rights *vis-a-vis* the rejected goods is a wrong against the seller.

The genesis of the "reasonable use" test lies in the recognition that frequently a buyer, after revoking his earlier acceptance of a good, is constrained by exogenous circumstances — many of which the seller controls — to continue using the good until a suitable replacement may realistically be secured. Clearly, to penalize the buyer for a predicament not of his own creation would be patently unjust. As the court stated in *Richardson* v. *Messina* (1960), 361 Mich. 364, 369, 105 N.W. 2d 153, 156:

* * * It does not lie in the seller's mouth to demand the utmost in nicety between permissible and impermissible use, for the perilous situation in which the purchaser finds himself arises from the imperfections of that furnished, for a consideration, by the seller himself. * * *"

In ascertaining whether a buyer's continued use of an item after revocation of its acceptance was reasonable, the trier of fact should pose and divine the answers to the following queries: (1) Upon being apprised of the buyer's revocation of his acceptance, what instructions, if any, did the seller tender the buyer concerning return of the now rejected goods? (2) Did the buyer's business needs or personal circumstances compel the continued use? (3) During the period of such use, did the seller persist in assuring the buyer that all nonconformities would be cured or that provisions would otherwise be made to recompense the latter for the dissatisfaction and inconvenience which the defects caused him? (4) Did the seller act in good faith? (5) Was the seller unduly prejudiced by the buyer's continued use? See *Uganski, supra.*

It is manifest that, upon consideration of the aforementioned criteria, appellee acted reasonably in continuing to operate her motor vehicle even after revocation of acceptance. First, the failure of the seller to advise the buyer, after the latter has revoked his acceptance of the goods, how the goods were to be returned entitles the buyer to retain possession of them. *O'Shea, supra; Erling* v. *Homera, Inc.* (N.D. 1980), 298 N.W. 2d 478; *Frank's Maintenance & Engineering, Inc.* v. *C. A. Roberts Co.* (1980), 86 Ill. App. 3d 980, 408 N.E. 2d 403; *Minsel* v. *El Rancho Mobile Home Center, Inc.* (1971), 32 Mich. App. 10, 188 N.W. 2d 9. Appellant, in the case at bar, did not respond to appellee's request for instructions regarding the disposition of the vehicle. Failing to have done so, appellant can hardly be heard now to complain of appellee's continued use of the automobile.

Secondly, appellee, a young clerical secretary of limited financial resources, was scarcely in position to return the defective automobile and obtain a second in order to meet her business and personal needs. A most unreasonable obligation would be imposed upon appellee were she to be required, in effect, to secure a loan to purchase a second car while remaining liable for repayment of the first car loan. See *Pavesi, supra.*

Additionally, appellant's successor (East), by attempting to repair the appellee's vehicle even after she tendered her notice of revocation, provided both express and tacit assurances that the automobile's defects were remediable, thereby, inducing her to retain possession. Moreover, whether appellant acted in good faith throughout this episode is highly problematic,

especially given the fact that whenever repair of the car was undertaken, new defects often miraculously arose while previous ones frequently went uncorrected. Both appellant's and East's refusal to honor the warranties before their expiration also evidences less than fair dealing.

Finally, it is apparent that appellant was not prejudiced by appellee's continued operation of the automobile. Had appellant retaken possession of the vehicle pursuant to appellee's notice of revocation, the automobile, which at the time had been driven only 12,000 miles, could easily have been resold. Indeed, the car was still marketable at the time of trial, as even then the odometer registered less than 35,000 miles. In any event, having failed to reassume ownership of the automobile when requested to do so, appellant alone must bear the loss for any diminution of the vehicle's resale value occurring between the two dates.

R.C. 1302.85(C) provides an additional basis for appellee's retention after revocation of the automobile.[3] A buyer who possesses, as appellee does in the instant action, a security interest in the rejected goods may continue to use them even after revoking his acceptance. See *Jorgensen* v. *Pressnall* (Ore. 1976), 545 P. 2d 1382; *Minsel, supra; Erling, supra.* Consequently, appellee's continued use of the defective vehicle was a permissible means of protecting her security interest therein.[4]

Appellant maintains, however, that even if appellee's continued operation of the automobile after revocation was reasonable, such use is *"prima facie* evidence" that the vehicle's nonconformities did not substantially impair its value to appellee, thus precluding availability of the remedy of revocation. Such an inference, though, may not be drawn. As stated earlier, external conditions beyond the buyer's immediate control often mandate continued use of an item even after revocation of its acceptance. Thus, it cannot seriously be contended that appellee, by continuing to operate the defective vehicle, intimated that its nonconformities did not substantially diminish its worth in her eyes.

We must similarly dismiss appellant's assertion that, as appellee's complaints primarily concerned cosmetic flaws, the defects were trivial. First, the chronic steering, transmission and brake problems which appellee experienced in operating the vehicle could hardly be deemed inconsequential. Moreover, even purely cosmetic defects, under the proper set of circumstances, can significantly affect the buyer's valuation of the good. *Pavesi, supra.*

---

[3] R.C. 1302.85(C) provides: "On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care, and custody and may hold such goods and resell them in like manner as an aggrieved seller as provided in section 1302.80 of the Revised Code."

[4] Appellant would be entitled to an offset for the reasonable value of appellee's continued use of the automobile after revocation but for the former's failure to adduce evidence of such value at trial.

Whether a complained of nonconformity substantially impairs an item's worth to the buyer is a determination exclusively within the purview of the fact-finder and must be based on objective evidence of the buyer's idiosyncratic tastes and needs. *Asciolla* v. *Manter Oldsmobile-Pontiac, Inc.* (1977), 117 N.H. 85, 370 A. 2d 270; *Fargo Machine & Tool Co.* v. *Kearney & Trecker Corp.* (E.D. Mich. S.D. 1977), 428 F. Supp. 364; *Tiger Motor Co.* v. *McMurtry* (1969), 284 Ala. 283, 224 So. 2d 638. Any defect that shakes the buyer's faith or undermines his confidence in the reliability and integrity of the purchased item is deemed to work a substantial impairment of the item's value and to provide a basis for revocation of the underlying sales agreement. *Durfee* v. *Rod Baxter Imports, Inc.* (Minn. 1977), 262 N.W. 2d 349, at 354; *Asciolla* v. *Manter Oldsmobile-Pontiac, Inc., supra,* at 274. Clearly, no error was committed in finding that the fears occasioned by the recurrent brake failings, steering malfunctions and other mechanical difficulties, as well as the utter frustration caused by the seemingly endless array of cosmetic flaws, constituted nonconformities giving rise to the remedy of revocation.

Finally, appellant argues that the limited and extended warranties covering repair of the subject vehicle provided appellee her only means of curing the automobile's defects. This court, in interpreting R.C. 1302.93(B),[5] however, recently held that:

"Where a new car express warranty limits a buyer's remedy to repair and replacement of defective parts, but the new car is so riddled with defects that the limited remedy of repair and replacement fails its essential purpose, the buyer may institute an action to recover damages for breach of warranty under R.C. 1302.88(B) and, in a proper case, incidental and consequential damages under R.C. 1302.88(C) and 1302.89." *Goddard* v. *General Motors Corp.* (1979), 60 Ohio St. 2d 41 [14 O.O.3d 203].

It is beyond reasonable dispute that the warranties furnished appellee failed of their essential purpose. The automobile was severally and severely flawed, and appellant proved incapable of curing its defects. As the Supreme Court of Alabama stated in *General Motors Corp.* v. *Earnest* (1966), 279 Ala. 299, 302, 184 So. 2d 811:

"* * * at some point after the purchase of a new automobile, the same should be put in good running condition, that is, the seller does not have an unlimited time for the performance of the obligation to replace and repair parts." Clearly, the hour glass has run on appellant's efforts to place the car in good running order. Thus, notwithstanding appellee's continued operation of the vehicle, the instant action is plainly one which permits the buyer to resort to remedies *dehors* the warranties.

---

[5] R.C. 1302.93(B) provides, in pertinent part: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Chapters 1301, 1302 * * * of the Revised Code."

On the basis of the foregoing analysis, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents in part and concurs in part.

HOLMES, J., dissenting in part and concurring in part. I concur in the syllabus law as set forth in this case, but would remand to the trial court for a determination of the amount due the dealer from the buyer as a setoff due to the buyer's use of the goods after revocation. Both the court of appeals and this court state that Swad should be entitled to such an offset against the judgment for the reasonable value of the use of the automobile after the revocation. However, both courts summarily dispense with such an offset by stating that Swad introduced no evidence to establish the reasonable value of the automobile's use.

The need for any such evidence when the appellant was asserting that the buyer had waived any right to revoke acceptance would, from the standpoint of trial procedure, have been highly questionable. The seller should be given an opportunity to present evidence of the reasonable value of such use, or the trial court should take judicial notice of the fair market value of the use of such an automobile.