John TRGO d/b/a Interstate Wrecker Service, et al., Plaintiffs,

v.

CHRYSLER CORPORATION, Defendant.

No. 1:97–CV–646.

United States District Court, N.D. Ohio, Eastern Division.

Nov. 20, 1998.

---

Kevin Thomas Roberts, Cleveland, OH, James A. Lowe, Mark L. Wakefield, Lowe, Eklund & Wakefield, Cleveland, OH, for John Trgo.

Kevin Thomas Roberts, Cleveland, OH, James A. Lowe, Mark L. Wakefield, Dennis P. Mulvihill, Lowe, Eklund & Wakefield, Cleveland, OH, for Knight's Towing, Inc., Bill's Service of Stamford, Inc., Lenwood McIntosh, Jr., John Springer, David L. Moore, North 54 Salvage Inc., Richard D Erb.

Elizabeth B. Wright, Robert Francis Ware, Jr., Brian J. Lamb, Thompson, Hine & Flory, Cleveland, OH, Roman P. Wuller, Thompson & Mitchell, St. Louis, MO, Douglas E. Winter, Bryan, Cave, McPheeters & McRoberts, Washington, DC, Charles A. Newman, Jeffrey S. Russell, Amy J. Thompson, Bryan Cave, St. Louis, MO, for Chrysler Corporation.

## OPINION AND ORDER

GWIN, District Judge.

On July 13, 1998, Defendant Chrysler Corporation ("Chrysler") filed a motion for partial summary judgment in this diversity action. [Doc. 105]. In deciding this motion, the Court must determine whether a genuine issue of material fact exists regarding seven claims involving breach of express and implied warranty, fraud, and misrepresentation.

Because the Court finds no genuine issue of material fact regarding plaintiffs' breach of express warranty claim under the Uniform Commercial Code ("UCC"), the Court grants Defendant Chrysler's motion for summary judgment on this claim. Further, because plaintiffs' fraud, negligent misrepresentation, and tortious breach of warranty claims are barred by the economic loss doctrine, the Court grants summary judgment as to these claims.

However, the Court finds there is a genuine issue of material fact whether Defendant Chrysler breached the express written warranty. There is also a genuine issue whether the limited remedy provided in the warranty fails of its essential purpose. The Court denies defendant's motion on the claim for breach of express written warranty.

The Court also finds that plaintiffs' breach of implied warranty claims are contingent upon whether the express written warranty fails of its essential purpose. However, any claim for breach of implied warranty of fitness for a particular purpose must fail because there is no evidence that Defendant Chrysler knew the particular purposes to which each plaintiff would put his truck. Thus, the Court grants defendant's motion as to this claim.

Finally, any claim for breach of an implied warranty of merchantability must fail as to the Ohio plaintiffs. Absent privity of contract the action sounds in tort, and commercial buyers are barred from seeking solely economic loss damages in tort claims.

## I. Factual Background

Each plaintiff in this case[1] purchased a Dodge Ram 3500 ("Ram 3500") truck, model year 1994 through 1996. Defendant Chrysler manufactured the vehicle. The Ram 3500 is a cab/chassis truck. It is designed to be upfitted with "work packages" such as wrecker or tow bodies, service bodies, dump bodies, and utility bodies. Plaintiffs make claims about defects in the trucks they purchased.

All plaintiffs claim that their trucks, once upfitted, suffered from a combination of brake, transmission, and/or frame problems. Plaintiffs Trgo claim these problems are due to a design defect in the cab/chassis and that the vehicle is insufficient for the purposes for which it was designed and advertised.

Plaintiffs make seven state law claims against Defendant Chrysler, including common law breach of warranty, breach of warranty under the UCC, fraud, negligent misrepresentation, and tortious breach of warranty.[2]

On July 13, 1998, Defendant Chrysler filed its motion for partial summary judgment. Defendant argues that it is entitled to summary judgment regarding some claims as to all plaintiffs and other claims as to certain plaintiffs.

## II. Standard of Review

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Morales v. American Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir.1995).

---

1. Several plaintiffs claim against Defendant Chrysler Corporation. The parties plaintiff have changed through the course of this action. As of this decision, the parties plaintiff consist of John Trgo (Interstate Wrecker Service), Donovan Lewis (Knight's Towing, Inc.), Lenwood McIntosh (Woody's All Pro Towing), John Springer (Tanks & Equipment), David Moore, and Richard Erb. The Court will refer to the plaintiffs collectively as "Plaintiffs Trgo" or "plaintiffs."

2. On January 26, 1997, Mr. Trgo filed a complaint in the Court of Common Pleas of Cuyahoga County, Ohio. On March 12, 1997, Defendant Chrysler removed the action to this Court.

The Court notes that plaintiffs' answer to defendant's motion for partial summary judgment contained references to paragraphs in the First Amended Complaint rather than the Second Amended Complaint. There is little difference between the claims at issue here and their description in the First Amended Complaint. Nonetheless, the Court notes that this opinion is based on claims in the Second Amended Complaint.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. See *60 Ivy Street Corp.*, 822 F.2d at 1435. But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Thus, a district court's function is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact.

The Court reviews the parties' motions and relevant portions of the record in light of this standard and concludes that plaintiffs' claims must fail. Defendant Chrysler is entitled to summary judgment as a matter of law.

### III. Choice of Law

Plaintiffs reside in different states. Plaintiffs Trgo, Lewis, and McIntosh are residents of Ohio. Plaintiff Moore resides in New Jersey, Plaintiff Erb in Nebraska, and Plaintiff Springer in California.

■ Under Ohio choice of law rules, in contract actions this Court applies the law of the state where the contract was made. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 825 (6th Cir.1996). In tort actions, this Court applies the law of the state where the injury occurred. *Id.* at 824–25.

■ Plaintiff Springer purchased his 1996 truck in Monroe, Louisiana. This Court applies Louisiana law to his contract actions. Because Springer's principal place of business is California and he made his only warranty claim in California, this Court presumes that any injury to Springer occurred in California. Therefore, California law applies to Springer's tort actions.

There is no evidence that any other plaintiff purchased a vehicle or suffered injury in a state different from his current state of residence. Thus, but for Springer, the Court applies the law of the plaintiffs' respective states of residence to both their tort and contract actions.

### IV. Discussion

#### A. Breach of Warranty

Plaintiffs make several claims regarding breach of warranty. Plaintiffs first assert a common law cause of action. In that action, plaintiffs say Defendant Chrysler breached its express written warranty by failing to remedy defects in the frame, transmission, and brakes after notice from the plaintiffs. Plaintiffs claim damages covering the costs of repair, lost profits, and diminution in their trucks' value. Plaintiffs assert essentially the same damages in their claims for breach of express warranty and implied warranties of merchantability and of fitness for a particular purpose under the Uniform Commercial Code.

Due to the numerous claims and the differences among state laws, the Court summarizes its rulings on the warranty claims before proceeding with its analysis.

First, Plaintiff Springer's warranty claims arise under Louisiana's redhibition statute. Because there is a genuine issue of material

fact whether a defect existed at the time of Plaintiff Springer's purchase, the Court denies Defendant Chrysler's motion for summary judgment on Springer's claim.

Because there is no evidence that Defendant Chrysler created an express warranty under the UCC, the Court grants defendant's motion for summary judgment on this claim.

The written warranty excludes implied warranties of merchantability and fitness for a particular purpose. Absent a showing that the express written warranty is invalid or fails of its essential purpose, plaintiffs may not bring independent causes of action for implied warranty. However, there is a genuine issue of material fact whether the express written warranty's limitation failed of its essential purpose. The Court therefore denies defendant's motion for summary judgment on the breach of express written warranty claim.

There is no evidence that Defendant Chrysler had knowledge of the particular use to which each plaintiff would put his truck. Therefore, if plaintiffs prove the express written warranty fails of its essential purpose, plaintiffs will nonetheless be barred from pursuing their claim for breach of implied warranty of fitness for a particular purpose.

If plaintiffs prove the express written warranty fails of its essential purpose, the Ohio plaintiffs will be barred from pursuing their breach of implied warranty of merchantability claims. Absent privity, claims for breach of implied warranty must be pursued as tort claims. Because Ohio plaintiffs are barred from recovering economic loss damages under tort theory, their breach of implied warranty of merchantability claims must fail. However, the claims of the other plaintiffs are not barred by lack of privity.

Having summarized the findings that follow, the Court now analyzes each claim in some depth.

### 1. The Warranty

Ram 3500 models for 1995–97 came with a 36 month/36,000 mile bumper-to-bumper[3] warranty.[4] The warranties covered brake repairs, including brake pads, for 12 months or 12,000 miles for all relevant years.

In exchange for these coverages, the language of the warranties limits plaintiffs' remedies. Warranties for 1995–97 contain nearly identical language. The 1995 warranty reads:

All of the Chrysler Limited Warranties stated in this book are the only express warranties made by Chrysler applicable to the truck. These Limited Warranties give you specific legal rights and you may also have other rights which vary from state to state.

You may have some implied warranties, depending on the state in which your truck is registered. For example, you may have—

1. An "implied warranty of merchantability" . . . or

2. An "implied warranty of fitness for a particular purpose"

These implied warranties are limited, to the extent allowed by law, to the time period(s) covered by the written warranties set forth in this booklet. If this truck is used primarily for business or commercial purposes, then these warranties do not apply and are completely disclaimed to the extent allowed by law.

Whether the vehicles are used commercially or not, Defendant Chrysler disclaimed all incidental and consequential damages in all relevant model years. The 1995 warranty reads:

Your Chrysler limited warranties don't cover any "incidental or consequential damages" connected with the failure of your truck under warranty. Such damages include lost time; inconvenience; the loss of use of your truck; the cost of rental cars, gasoline, telephone, travel or lodging;

---

3. Vehicles equipped with a Cummins Diesel Engine were extended coverage for certain engine parts for 5 years or 50,000 miles.

4. Mr. Lewis, owner of a 1994 truck, had a choice of warranties: a 36 month/36,000 mile warranty with no powertrain warranty, or a 12 month/12,000 mile warranty with 7 year/70,000 mile powertrain coverage. It is unclear from the record which warranty Mr. Lewis chose for his 1994 vehicle.

the loss of personal or commercial property; the loss of revenue; etc.

In all relevant years, the warranties also excluded the costs of repairing damage caused by "misuse," including overloading, and alterations to the vehicle that do not conform with Chrysler's specifications.

The terms specifically disclaim implied warranties for vehicles used primarily for business or commercial purposes.[5] Plaintiffs use their vehicles primarily for business use.[6] At this stage of analysis, the limitation on implied warranties stands and only express warranties remain.

### 2. Plaintiff Springer

▮ As an initial matter, the Court notes that because Mr. Springer's breach of warranty claims sound in contract, Louisiana law applies. Louisiana does not recognize common law actions for breach of warranty. *In re Ford Motor Co. Vehicle Paint Litigation*, 1996 WL 426548, *17 (E.D.La.1996). Parties may pursue only breach of warranty claims that are cognizable under Louisiana's "redhibition" statute. *Id.* Thus, Mr. Springer is limited to a redhibitory action for breach of warranty.[7]

An action in redhibition arises from the sale of a defective product. "A defect is redihibitory when it renders the thing use-

less, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." LA. ST. ANN.-C.C. Art. 2520. A defect is also redhibitory "when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Id.*

▮ Sellers in Louisiana are "bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product's intended use." *Rey v. Cuccia*, 298 So.2d 840, 842 (La.1974). Louisiana does not require privity between a buyer and a remote manufacturer before a warranty action may be brought. *Media Production Consultants, Inc. v. Mercedes–Benz of North America, Inc.*, 262 La. 80, 262 So.2d 377 (1972). Plaintiff Springer is not barred from bringing an action in redhibition for lack of privity.

▮ An essential element of a redhibition claim is that the defect be present at the time of sale. *F & S Offshore, Inc. v. Service Mach. & Shipbuilding Corp.*, 430 So.2d 1167 (La.App. 1st Cir.1983). The existence of a defect at the time of sale and the buyer's knowledge of the defect are questions of fact which preclude summary judgment. *Gri-*

---

5. The 1994 warranty, affecting one of Mr. Lewis's trucks, does not contain language disclaiming implied warranties if the owner uses the truck for business or commercial purposes. However, based on the Court's analysis that follows, Mr. Lewis's implied warranties are defeated because there is no evidence of breach of the implied warranty of fitness for a particular purpose. As explained in this section, Ohio law also converts claims for breach of implied warranty into tort claims when contractual privity is absent. Because plaintiffs are commercial buyers seeking economic loss damages, Ohio law would bar Mr. Lewis' merchantability claim.

6. The Court notes that Mr. Erb's status is unclear. In the Second Amended Complaint, Mr. Erb is listed as an owner of 1996 and 1997 Ram 3500s. There is no indication in the Complaint that he uses the truck for commercial purposes. In its Motion for Class Certification (denied by this Court on October 20, 1998), Mr. Erb was described as using the truck for hauling purposes, which the Court accepted as personal, not commercial, use for purposes of considering the motion.

 However, in its Brief in Opposition to Defendant Chrysler's motion for summary judgment,

plaintiffs state that they are "individuals who run small businesses" and who "use their trucks to make a living." Plaintiffs also do not respond to defendant's assertion that Mr. Erb failed to appear for a deposition or to respond to interrogatories. In fact, plaintiffs do not even mention Mr. Erb in their brief. Under the circumstances, the Court must presume that Mr. Erb is similarly situated to the other plaintiffs.

7. Defendant implies that because Mr. Springer did not specifically plead his claims under the redhibition statute, his claims must fail. Though Louisiana recognizes only those claims falling within statutory definitions, this Court can find no authority stating that Louisiana law recognizes only those claims specifically citing Article 2520 of the Louisiana Civil Code in the pleadings. *See, e.g., In re Ford Motor Co. Vehicle Paint Litigation*, 1996 WL 426548, *17 (finding apparently common law assertions of breach of warranty cognizable under redhibition statute); *Thomas v. Lavigne*, 149 So. 298 (La.App. 1st Cir.1933) (accepting action as one in redhibition despite lack of specific pleading).

*maldi Constr., Inc. v. J.P. & Sons Contractors, Inc.*, 686 So.2d 935 (La.App. 5th Cir. 1996).

 Plaintiffs assert that it is not possible to avoid overloading the Ram 3500 when towing a "typical" vehicle. The Court finds that there is a genuine issue of material fact regarding whether a defect existed at the time of the sale. Accordingly, the Court denies Defendant Chrysler's motion for summary judgment as to Plaintiff Springer's warranty claims, which proceed as an action in redhibition.

The Court now addresses the warranty claims of the remainder of the plaintiffs.

### 3. UCC Express Warranty

Because there is no evidence that an express warranty under the UCC was created or breached, the Court therefore grants Defendant Chrysler's motion for summary judgment on this claim.

 Under the UCC, express warranties arise when a "description of the goods which is made a part of the basis of the bargain creates an express warranty that the goods shall conform to that description." NEB. REV. STAT. § 2–314; N.J. STAT. § 12A:2–314; OHIO REV. CODE § 1302.26(A)(2).

Plaintiffs argue generally that Chrysler expressly represented that the Ram 3500 could be outfitted with commercial packages. Specifically, plaintiffs assert that Chrysler represented that the Ram 3500 could be used as a tow truck.

Defendant Chrysler did not assert that the truck would perform as advertised regardless of what commercial body it was upfitted with or what use it was put to. Defendant specified the maximum weight the vehicle could handle once upfitted, weights which plaintiffs exceeded. There is no evidence the Ram 3500 cannot be equipped with commercial packages within the specifications provided by Chrysler.

Plaintiffs have not shown sufficient evidence to raise a genuine issue of material fact that Defendant made express representations creating an express warranty under the UCC. Accordingly, the Court grants Defendant Chrysler's motion for summary judgment as to all plaintiffs asserting UCC claims on this issue.

### 4. Express Written Warranty

 Defendant Chrysler's written warranty specifically states that it is the only express warranty made by Chrysler with respect to the trucks and limits plaintiffs' remedies for defective parts. There is a genuine issue of material fact whether defendant wrongfully refused to repair valid claims and voided warranties. There is also a genuine issue whether the remedy under the warranty failed of its essential purpose. Therefore, the Court denies Defendant Chrysler's motion for summary judgment on this claim.

The warranty expressly excludes coverage for vehicles that have been overloaded. Defendant has presented evidence that all but Mr. Springer's vehicle was overloaded. Plaintiffs argue they could not avoid overloading the truck because the Ram 3500 is defective and simply cannot support commercial applications.

Though Defendant Chrysler honored many repair claims, Defendant also denied certain claims. For example, Chrysler honored Mr. Lewis's first transmission claim. Upon learning that Mr. Lewis used the vehicle for towing, Chrysler informed the dealership that using the truck for towing voided the warranty. Chrysler refused later claims by Mr. Lewis. Defendant Chrysler also voided Mr. McIntosh's warranty when it learned he used his truck for towing.

In addition, Chrysler refused a frame claim by Plaintiff Springer due to a dispute concerning mileage on his truck. Springer paid for the installation of a new transmission. When that transmission failed, Chrysler honored Springer's claim.

Plaintiffs argue that Defendant Chrysler wrongfully refused certain claims and improperly voided warranties.

The Court finds that there is a genuine issue as to whether Defendant Chrysler wrongfully refused to honor claims and voided warranties. Accordingly, the Court denies Chrysler's motion for summary judgment on this point.

■ Plaintiffs also argue that the repairs that Chrysler performed did not fix the problems with their vehicles. That the repairs tendered may not have resolved the problems is not an issue of breach *per se* but of failure of the available remedy's essential purpose.

The written warranty defines the limits of plaintiffs' remedy for defects in the Ram 3500's workmanship. Defendant Chrysler specifically disclaimed implied warranties for buyers using the Ram 3500 for business or commercial purposes.

Though limitations on remedies are allowed under the UCC, the buyer is always entitled to the benefit of its bargain. *See John Deere Co. v. Hand,* 211 Neb. 549, 553–54, 319 N.W.2d 434 (1982); *Kearney & Trecker Corp. v. Master Engraving Co., Inc.,* 107 N.J. 584, 592–93, 527 A.2d 429 (1987); *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 7 F.Supp.2d 954, 966 (N.D.Ohio 1998).

If a limited remedy "fails of its essential purpose," the buyer usually may pursue other remedies provided by the UCC if the underlying defect substantially affects the value of the buyer's bargain. *See John Deere,* 211 Neb. at 553–54, 319 N.W.2d 434; *Kearney & Trecker,* 107 N.J. at 593–94, 527 A.2d 429; *Goddard v. General Motors Corp.,* 60 Ohio St.2d 41, 46–47, 396 N.E.2d 761 (1979).

■ Whether a limitation fails of its essential purpose is a question of fact. *See, e.g., John Deere,* 211 Neb. at 554, 319 N.W.2d 434; *Goodyear,* 7 F.Supp.2d at 966. Further, whether a nonconformity "substantially impairs an item's worth to the buyer is a determination exclusively within the purview of the fact-finder and must be based on objective evidence of the buyer's idiosyncratic tastes and needs." *McCullough v. Bill Swad Chrysler–Plymouth, Inc.,* 5 Ohio St.3d 181, 186, 449 N.E.2d 1289 (1983) (citations omitted).

"Chronic" transmission and brake problems can significantly affect the buyer's valuation of the good. *Id.* at 185, 449 N.E.2d 1289. "Any defect that shakes the buyer's faith or undermines his confidence in the reliability and integrity of the purchased item is deemed to work a substantial impairment of the item's value and to provide a basis for revocation of the underlying sales agreement." *Id.* at 186, 449 N.E.2d 1289 (citation omitted); *see also General Motors Acceptance Corp. v. Jankowitz,* 216 N.J.Super. 313, 523 A.2d 695, 704 (1987) (stating that court must consider whether nonconformity "shakes the buyer's confidence" in the goods).

■ If, after repeated repairs, a vehicle fails "to operate as should a new vehicle," the repair remedy fails of its essential purpose. *Goddard,* 60 Ohio St.2d at 47, 396 N.E.2d 761 (citing *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513 (1978)).

Here, plaintiffs argue that the remedy available under Defendant Chrysler's warranty failed of its essential purpose because repeated repairs did not fix the trucks' problems. Failure to cure defects under warranty within a reasonable time supports a finding that a remedy failed of its essential purpose. *See, e.g., Goddard,* 60 Ohio St.2d at 45, 396 N.E.2d 761 ("[W]hen a seller is unable to fulfill its warranted obligation to effectively repair or replace defects in goods which are the subject matter of the sale, ... the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose.").

Plaintiffs also argue the Ram 3500 cannot be adapted to any commercial application without overloading the vehicle, effectively excluding any of their repair claims from warranty coverage. In essence, plaintiffs say the limitation on their remedies due to overloading denied them the benefit of their bargain.

■ The Court finds that there is a genuine issue of material fact whether the limited remedy in the warranty failed of its essential purpose. There is also a genuine issue whether Chrysler breached the express written warranty by denying valid claims and voiding warranties. Accordingly, Defendant Chrysler's motion for summary judgment on the breach of express written warranty claims are denied.

### 5. Implied Warranties

If plaintiffs prevail on their assertion that remedies under the warranty fail of their essential purpose, the written warranty's disclaimer of implied warranties and claims for incidental and consequential damages no longer applies and certain UCC damages become available.[8] *See* NEB. REV. STAT. U.C.C. § 2–719(2); N.J. STAT. 12A:2–719(2); OHIO REV. CODE § 1302.93(B). However, plaintiffs are still subject to state laws governing these potential remedies.

■ After considering the remedies available to plaintiffs, the Court finds that any claims for breach of implied warranty of fitness for a particular purpose must fail. Claims for breach of the implied warranty of merchantability fail as to the Ohio plaintiffs.

An implied warranty of fitness for a particular purpose arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." NEB. REV. STAT. U.C.C. § 2–315; N.J. STAT. 12A:2–315; OHIO REV. CODE § 1302.28.

Plaintiffs assert that they communicated their particular purpose to Defendant Chrysler. However, only Mr. McIntosh spoke with Chrysler prior to purchasing his truck. The Chrysler engineer revealed that he knew of some frame problems with "rollback" wrecker bodies. Mr. McIntosh did not purchase a rollback wrecker body.

Plaintiffs also argue that they relied on Chrysler's advertising that the truck could be used for towing. Such statements are too general to indicate that defendant had any knowledge of the particular upfitting to be performed on each vehicle or the particular use each plaintiff had in mind when purchasing his truck.

Because no evidence shows that Defendant Chrysler knew of plaintiffs' specific purpose or that plaintiffs relied upon defendant to select appropriate goods, the Court gives defendant judgment as to the fitness claim.

Thus, if plaintiffs prove that the warranty fails of its essential purpose, only an implied warranty of merchantability remains. However, as explained below, under Ohio law Plaintiffs Trgo, Lewis, and McIntosh are barred from bringing such claims. The remaining plaintiffs' claims are not barred.

■ "Merchantable" goods are those that "pass without objection in the trade" and "are fit for the ordinary purposes for which such goods are made." NEB. REV. STAT. U.C.C. § 2–314; N.J. STAT. 12A:2–314; OHIO REV. CODE § 1302.27. A warranty that goods will be merchantable is implied in every sale contract.

■ In Ohio, when a party brings a claim for breach of implied warranty absent privity of contract, the cause of action is one sounding in tort and is subject to the two-year statute of limitations of Ohio Rev.Code § 2305.10. *Lawyers Coop. Publ'g Co. v. Muething,* 65 Ohio St.3d 273, 278–79, 603 N.E.2d 969 (1992) (citing *U.S. Fidelity & Guaranty Co. v. Truck & Concrete Equipment Co.,* 21 Ohio St.2d 244, 257 N.E.2d 380 (1970)); *C.W. Zumbiel Co. v. Reichhold Chem. Inc.,* 1996 WL 400501, *2 and n. 1 (Ohio App.1st Dist. 1996). As established in the discussion of tortious breach of warranty, *infra,* claims for breach of implied warranty in which parties seek economic loss damages are barred under Ohio law.[9]

---

8. The Court notes that the states differ in what remedies are available upon a finding of failure of essential purpose. For example, though a remedy limited to repair or replacement may fail of its essential purpose, New Jersey law does not automatically grant the right to pursue consequential damages when they were excluded under the warranty. *Kearney & Trecker,* 107 N.J. at 595–98, 527 A.2d 429. In contrast, if a repair or replacement remedy fails of its essential purpose, Nebraska and Ohio law allow plaintiffs to pursue any remedy available under the UCC, even if consequential damages had also been excluded under the warranty. *John Deere,* 211 Neb. at 554, 319 N.W.2d 434; *Goddard,* 60 Ohio St.2d at 47–48, 396 N.E.2d 761.

9. The Court acknowledges that the Supreme Court of Ohio has more recently allowed certain tort claims to proceed even though the plaintiff sought only economic damages. *See LaPuma v. Collinwood Concrete,* 75 Ohio St.3d 64, 661 N.E.2d 714 (1996). However, the plaintiff in *LaPuma* was a consumer not in privity with the defendant-supplier.

In contrast, a lack of privity does not bar contractual claims for breach of implied warranties in Louisiana, Nebraska, or New Jersey. *See Media Production Consultants, Inc. v. Mercedes–Benz of North America, Inc.*, 262 La. 80, 262 So.2d 377 (1972); *Peterson v. North Am. Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625 (1984); *Spring Motors Distrib. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985).

Accordingly, the Court grants Defendant Chrysler's motion on the merchantability claim as to the Ohio plaintiffs.

### B. Tortious Breach of Warranty

Plaintiffs claim Defendant Chrysler breached express and implied warranties that the Ram 3500 would be free from defects and fit for the ordinary purposes for which such trucks are used. Plaintiffs claim that, as a direct and proximate result of the breach, they suffered monetary losses stemming from the loss in value of the trucks, the cost of repairs, and lost profits during repair periods.

This warranty claim, sounding in tort, fails under the economic loss doctrine of plaintiffs' respective states. Accordingly, defendant's motion for summary judgment is granted as to all plaintiffs on this claim.

■ Because this claim sounds in tort, California law applies to Mr. Springer.[10] California does not recognize recovery for economic loss in an action sounding in tort. *Seely v. White Motor Co.*, 63 Cal.2d 9, *17–18, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). Notably, this principle is not limited by the status or bargaining position of the buyer. Thus, in *Seely*, the California Supreme Court determined that a plaintiff purchasing a vehicle for use in his trucking business "could have shopped around until he found the truck that would fulfill his business needs. He could fairly be charged with the risk that the product would not match his economic expectations." *Id.* at *19, 45 Cal.Rptr. 17, 403

P.2d 145. Mr. Springer's seventh cause of action fails under California law.

■ Similarly, Mr. Erb's claim fails. Nebraska follows *Seely* in refusing to recognize tort actions for recovery of economic losses suffered after purchase of a product via contract. *National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 788, 332 N.W.2d 39 (1983) ("If the loss is merely economic, the Uniform Commercial Code has given the purchaser ... ample recourse.") (quoting *Hawkins Constr. Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973)).

Ohio and New Jersey are included in the minority of states rejecting *Seely* in favor of *Santor v. A. & M. Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965). In *Santor*, the Supreme Court of New Jersey recognized a consumer's claim for direct economic loss, characterizing it as a tort claim despite the plaintiff's labeling it as a claim for breach of implied warranty of merchantability. *Id.* at 63–67, 207 A.2d 305. Later cases refined New Jersey's view without overruling *Santor* and guide this Court in its decision regarding the remaining plaintiffs.

■ In *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985), the New Jersey Supreme Court established that tort remedies for economic loss are not available to commercial buyers of defective products. Spring Motors, which was in the business of buying and leasing trucks, entered a contract with a Ford dealership to purchase Ford trucks with a particular engine supplied by an outside company, Clark Equipment Company. Clark extended a warranty on its transmission. Spring Motors experienced problems with the transmission and eventually sued both the Ford dealership, Ford, and Clark. There was no privity of contract between the plaintiff and the remote defendant-supplier. In that, *Spring Motors* is similar to the instant case.

---

As explained in this Court's discussion of tortious breach of warranty, Plaintiffs Trgo would not be able to pursue economic loss damages in tort because of their status as commercial buyers.

**10.** Defendant Chrysler mistakenly asserts that Louisiana law applies to all of Mr. Springer's warranty claims, whether sounding in contract or tort. As explained *supra*, choice of law rules require this Court to apply California law to Mr. Springer's tort actions.

The New Jersey Supreme Court determined that a commercial buyer such as Spring Motors could not recover in tort for economic loss against any of the defendants. The court based its conclusion on a comparison of "the policies underlying the doctrine of strict liability and those underlying the U.C.C. Those policy considerations include, among others, the relative bargaining power of the parties and the allocation of the loss to the better risk-bearer in a modern marketing system." *Id.* at 575, 489 A.2d 660.

In the instant case, Defendant Chrysler argues that plaintiffs are commercial buyers. Plaintiffs dispute this characterization, but admit to purchasing the trucks for business use. Plaintiffs characterize the trucks as "commercial vehicles" used for "commercial applications" throughout the Second Amended Complaint. Nonetheless, Plaintiffs argue that, as owners of small businesses, they are not equal participants in negotiations with Defendant Chrysler and therefore cannot be classified as "commercial buyers."

However, bargaining power does not define status as a commercial buyer. Bargaining power is relevant only to determining which party is better situated to bear a risk of loss. Plaintiffs Trgo, Lewis, McIntosh, and Moore are commercial buyers. Upon assessing the parties' bargaining power, the Court concludes that the Ohio and New Jersey plaintiffs are held to bear the risk of loss and are barred from tort recovery for economic loss.

The *Spring Motors* court noted that "[t]he considerations that give rise to strict liability do not obtain between commercial parties with comparable bargaining power." *Id.* at 576, 489 A.2d 660. In considering parties' bargaining power, "perfect parity is not necessary to a determination that parties have substantially equal bargaining positions." *Id.* Rather, the Supreme Court of New Jersey considered whether each party was "at least as well situated" as the other to assess

the impact of economic loss caused by the purchase of a defective product. *Id.*

The court in *Spring Motors* determined that a commercial buyer "may be better situated than the manufacturer" to factor the risk of economic loss into its price. The court presumed that the price paid by the plaintiff-dealer reflected the fact that the manufacturer was liable for certain repairs. Thus, the court viewed the dealer's attempt at recovering for later economic loss improper:

> By seeking to impose the risk of loss on [defendant] Ford, Spring Motors seeks, in effect, to obtain a better bargain than it made. In such a context, the imposition of the risk of loss on the manufacturer might lead to price increases for all of its customers, including individual consumers. As between commercial buyers, then, the allocation of risks in accordance with their agreement better serves the public interest than an allocation achieved as a matter of policy without reference to that agreement.

*Id.* (citation omitted).

There is no qualitative difference between the relationship that the *Spring Motors* plaintiff-dealer had with its defendant-manufacturer and the relationship that plaintiffs in the instant case have with Defendant Chrysler. It is true that plaintiffs did not bargain directly with Chrysler over terms of the contract when purchasing the trucks, as the dealers did with the manufacturer in *Spring Motors*. The plaintiffs were well-situated to consider the limits of the available warranties when negotiating the price, whether the warranties were provided by a direct seller or remote manufacturer. Even absent the opportunity to negotiate directly with Chrysler over available remedies, as commercial buyers plaintiffs are barred from pursuing tort remedies for economic loss against remote parties.[11] Under *Spring Motors*, New Jer-

---

11. The Court notes that since the *Spring Motors* decision, the Supreme Court of New Jersey has determined that even consumers are barred from tort claims for economic loss. *Alloway v. General Marine Indus., L.P.*, 149 N.J. 620, 695 A.2d 264 (1997). Thus, plaintiffs would likely be barred from pursuing economic damages whether they are determined to be consumers or commercial buyers. Nonetheless, this Court discusses *Spring Motors'* application to this case because lack of privity between buyers and remote manufacturers has played a role in development of the economic loss doctrine.

sey resident Moore's claim for economic loss must fail.

Similarly, Plaintiffs Trgo, Lewis, and McIntosh cannot recover in tort for economic loss. Plaintiffs and Defendant Chrysler point to the same case in arguing that Ohio allows or bars, respectively, the claim at issue. However, the parties differ in its interpretation. Defendant argues that *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624 (1989), says commercial buyers may not bring tort claims for economic loss. Plaintiffs agree with that proposition but claim that it applies only in cases where there is privity of contract between commercial buyers.

The parties in *Chemtrol* were in privity of contract. In *Chemtrol*, the Ohio Supreme Court specifically disclaimed considering "whether, absent privity of contract, a plaintiff can recover purely economic losses under tort theory." *Id.* at 50 n. 7, 537 N.E.2d 624.

However, in disclaiming the need to consider the issue, the Ohio court cast doubt upon earlier cases allowing parties not in privity to recover in tort for economic losses. *Id.* ("While [earlier cases] held that such a plaintiff could recover, those decisions relied upon *Santor*, which has subsequently come to represent the minority view and has been the subject of substantial criticism.") [12] Further, the court cited *Spring Motors* with approval:

> We also find persuasive the New Jersey Supreme Court's decision in [*Spring Motors*] in which the court held that "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller *and a remote supplier* in a distributive chain for breach of warranty

under the U.C.C., *but not in strict liability or negligence.*"

*Id.* at 50, 537 N.E.2d 624 (emphasis added) (citations omitted).[13] Thus, whether privity exists or not, commercial parties cannot recover for solely economic loss in tort under Ohio law.

Finally, even if the Ohio Supreme Court cannot be seen as having spoken directly to the issue, lower Ohio courts have determined that commercial buyers cannot recover in tort for economic loss. *See, e.g., Midwest Ford, Inc. v. C.T. Taylor Co.*, 118 Ohio App.3d 798, 801–05, 694 N.E.2d 114 (1997) (analyzing *Chemtrol* and *Spring Motors* ).

After reviewing New Jersey and Ohio law, the Court finds that Plaintiffs Moore, Trgo, Lewis, and McIntosh are barred from recovering economic loss damages. Defendant Chrysler's motion for summary judgment is granted as to all plaintiffs on the seventh cause of action.

### C. Fraudulent and Negligent Misrepresentation

In its fifth and sixth causes of action, plaintiffs charge Defendant Chrysler with fraudulent and negligent misrepresentation, respectively. Plaintiffs allege that they relied on defendant's statements, sales brochures, and advertisements in purchasing the trucks. Because the relevant state laws bar the negligent representation claim, Defendant Chrysler's motion for summary judgment on this claim is granted as to all plaintiffs. The Court grants defendant's motion on the fraud claim due to a lack of evidence of misrepresentation by Defendant Chrysler and reliance by Plaintiffs Trgo.

12. Although Ohio has historically followed the New Jersey Supreme Court's *Santor* decision, the Ohio court's footnote in *Chemtrol* indicates possible departure from it. In any event, Ohio's embrace of *Spring Motors* is not inconsistent with *Santor* because the New Jersey Supreme Court noted that *Santor* was not controlling in its decision in *Spring Motors*. *Spring Motors*, 98 N.J. at 575, 489 A.2d 660. Thus, even if *Santor* is no longer favored in either New Jersey or Ohio, *Spring Motors* still stands.

13. The Court notes further that an earlier decision of the Northern District of Ohio is not con-

trolling in this case. In *Mead Corp. v. Allendale Mut. Ins. Co.*, 465 F.Supp. 355 (N.D.Ohio 1979), the court determined that tort recovery for economic loss was available under Ohio law. The case involved two commercial parties. However, the decision predates both *Spring Motors* and the Ohio Supreme Court's decision in *Chemtrol*, which cast doubt upon the earlier cases upon which *Mead* rested. Current Ohio law must trump Northern District precedent whose application, while not decisively overturned, is questionable at best.

■ Plaintiffs are barred from pursuing the negligent misrepresentation claim by the economic loss doctrine, explained in the tortious breach of warranty context, *supra. See also AB Avnet EMG v. Sierra Semiconductor Corp.,* 81 F.3d 167, 1996 WL 134344, *1 (9th Cir.1996) (addressing a negligent misrepresentation claim and stating under California law where "the claim is one for purely economic loss, the remedies are limited to those provided by contract and the UCC"); *Nelson v. Production Credit Ass'n of the Midlands,* 729 F.Supp. 677, 688 (D.Neb.1989) ("Nothing in ... Nebraska law suggests that both a contract action and a negligence action are permitted when duties rest upon a contract. When a claim is based upon a failure to comply with an express contractual provision, the nature of the action is in contract, rather than in negligence."), *aff'd,* 930 F.2d 599 (8th Cir.1991); *Alloway v. General Marine Indus., L.P.,* 149 N.J. 620, 641, 695 A.2d 264 (1997) (stating that under New Jersey law "a tort cause of action for economic loss duplicating the one provided by the UCC is superfluous and counterproductive"); *Picker Int'l, Inc. v. Mayo Fndn.,* 6 F.Supp.2d 685, 688–89 (N.D.Ohio 1998) ("In Ohio it is well established that a party cannot bring a cause of action in tort (such as negligent misrepresentation) for economic losses.").

Accordingly, Defendant's motion for summary judgment is granted as to all plaintiffs on the negligent misrepresentation claim.

With regard to fraud, plaintiffs say Defendant Chrysler knew or should have known that the Ram 3500's brake, transmission, and frame were "wholly inadequate for the uses for which the truck was marketed and sold." Plaintiffs seek damages for repair and replacement of parts, purchase price of the trucks, and lost profits.

The parties do not address whether recovery is available for economic loss in a fraud action. The Court assumes the parties agree that such remedy is available. Not many courts have addressed the issue. New Jersey allows such recovery. *See First Valley Leasing, Inc. v. Goushy,* 795 F.Supp. 693, 698 (D.N.J.1992) (stating that parties with a UCC claim are not barred from recovering fraud damages for purely economic loss).

California apparently allows such recovery. *See* CAL. CIV. CODE § 3343(a) (addressing parties "defrauded in the purchase, sale or exchange of property"); *but see Standard Platforms, Ltd. v. Document Imaging Systems Corp.,* 1995 WL 691868, *3 (N.D.Cal. 1995) (stating, in a breach of warranty case, "the same rationale that prohibits negligence claims for the recovery of purely economic damages also bars fraud claims that are subsumed within contractual obligations"; court never addressed § 3343). Ohio and Nebraska law on the issue of fraud actions for purely economic loss is less clear.

■ Even if the law of all four states relevant in the instant case recognize that recovery for economic loss is available in fraud actions, this Court finds that plaintiffs' fraud claim must fail. After reviewing the record, the Court finds there is no genuine issue of material fact regarding the representations allegedly made by Defendant Chrysler in this case. Defendant's motion for summary judgment is granted as to all plaintiffs on this claim.

Plaintiffs Trgo allege that Defendant Chrysler's advertisements in trade magazines and its sales brochure represented that the Ram 3500 chassis was capable of multiple commercial applications. Plaintiffs primary argument consists of a picture in a 1995 sales brochure. Plaintiffs say the picture proves that defendant knew the Ram 3500 was not capable for the use represented in the picture.

Plaintiffs present evidence of the potential weight of the specific wrecker body depicted and demonstrate how, under certain conditions, the combined weight of the chassis, wrecker body, vehicle options, driver, and average car would put the Ram 3500 over its advertised weight limits.

In essence, plaintiffs assert the wrecker body advertised cannot tow an average car. Therefore, plaintiffs argue, Chrysler can be held to have known that the chassis supporting the wrecker body pictured could not tow any average car, regardless of what tow or wrecker body is added to the chassis. Plaintiffs argue this allegedly fraudulent advertisement induced them to purchase trucks

which later proved incapable of performing as tow trucks. Plaintiffs' argument is misplaced for several reasons.

First, plaintiffs compute the potential weight of the pictured vehicle by combining the maximum possible weight of the wrecker model pictured, various options, and driver weight. Plaintiffs then make a leap of logic in asserting that towing a "typical vehicle" (weighing 2,000 pounds) would, in every case and with any wrecker body, push the Ram 3500 over its advertised gross vehicle weight.

Defendant Chrysler counters by showing the advertised model would not in every case exceed the advertised gross vehicle weight. Thus, by extension, defendant counters plaintiffs' argument that the Ram 3500 cannot be used for towing under any circumstances.[14]

Even if plaintiffs are accurate that the pictured model could not tow a "typical" vehicle, it does not follow that the Ram 3500 is incapable of towing under any circumstances, regardless of wrecker model installed on it, or that it is incapable of performing other commercial uses with other work bodies. Absent more substantial evidence, it cannot follow that Defendant Chrysler had fraudulent intent in advertising the Ram 3500 as capable of use as a tow truck.

Second, plaintiffs do not present sufficient evidence of reliance by plaintiffs upon representations made by Defendant Chrysler. Only two plaintiffs had any direct contact with Chrysler. Mr. McIntosh spoke with a Chrysler engineer, who stated that he knew only of some reported problems with flatbed rollbacks, not with other wrecker bodies. Mr. McIntosh did not install a rollback wrecker body. There is no evidence that the Chrysler engineer knew of frame problems with other wrecker bodies so as to impute fraudulent intent. Further, Mr. McIntosh had already ordered the Ram 3500 at the time he spoke with the engineer and could

not have relied on the engineer's statements in purchasing.[15]

Mr. Lewis spoke with Chrysler well after his purchase and testified that when he did speak with defendant's representatives, he did not believe what they told him about the vehicle. Mr. Lewis did not rely on Defendant Chrysler.

More generally, plaintiffs argue that they relied on the terms of Chrysler's warranties when purchasing the trucks. They allege that Chrysler subsequently failed to honor claims made under warranties or voided the warranty altogether. Plaintiffs allege that Chrysler knew it would refuse to honor the warranties at the time of plaintiffs' purchases and knew the truck could not perform as advertised. Plaintiffs' assert that Chrysler's knowledge constitutes intent to defraud plaintiffs.

There is no evidence to support plaintiffs' claims. Many claims were honored. In certain instances, Defendant Chrysler did not honor warranty claims. But its failure to do so is a question of breach of warranty, not fraud.

For example, Defendant Chrysler refused Mr. Springer's first transmission warranty claim because of a dispute over the car's mileage at the time of the claim. Mr. Springer installed a new transmission, which subsequently failed. He then made a claim on the failure of the second transmission, which Chrysler honored.

Mr. Springer also claims that Chrysler did not honor his brake warranty claims. The only evidence on this issue is Mr. Springer's affidavit, which states that he has had the brakes repaired every 20,000 miles, and an answer to an interrogatory, which states that Mr. Springer believes the warranty "should" have covered excessive brake pad wear. The warranty provided coverage for the brakes

---

**14.** Plaintiffs offer a dealer price list into evidence to show the possible weights of the wrecker model pictured in Defendant Chrysler's brochure. The "No–Mar T810" is the second-heaviest wrecker model listed on the sheet. There are at least three other wrecker models on the list weighing several hundred pounds less than the T810. There are also two work bodies of significantly lower weight than the T810 on the list that appear to be used for towing purposes. The list

illustrates that even within the brand of wrecker model pictured in the brochure, there is a potential variation in weight that plaintiffs do not address.

**15.** Mr. McIntosh spoke with the Chrysler engineer after ordering the chassis but before delivery occurred.

for twelve months or 12,000 miles. There is no evidence that Defendant Chrysler defrauded Mr. Springer when denying his claims.

Defendant Chrysler honored all of Mr. Lewis's brake and transmission claims, but denied the frame claim on his 1994 vehicle because it believed the work body was installed improperly and stated that the warranty did not cover vehicles with wrecker bodies. Defendant originally denied Mr. McIntosh's frame claim for the same reasons, but repaired the frame after Mr. McIntosh threatened take his complaint to the media.

Mr. Lewis states in his affidavit that he did not make a warranty claim for frame problems on his 1995 vehicle because he knew Defendant Chrysler did not honor warranty claims on trucks with wrecker bodies.

Defendant Chrysler made several repairs to Mr. Trgo's vehicle. Mr. Moore had a frame problem which he believed was fixed by his upfitter and apparently never made a formal warranty claim to defendant. Although Mr. Moore complained of brake problems, his dealership informed him nothing could be done to fix the problem and Mr. Moore never made a formal warranty claim.

Defendant Chrysler voided Mr. McIntosh's extended warranty when it learned he was using his vehicle for towing. Plaintiffs argue that defendant "knew" it would void the warranty when Mr. McIntosh purchased his vehicle. To the extent that Defendant Chrysler was within its rights under the warranty to refuse claims of owners using their vehicles for towing, then prior intent to void the warranty upon learning of towing usage cannot be fraudulent. To the extent that defendant was not entitled to refuse the claims, the cause of action is not fraud but breach of warranty.

The Court recognizes that plaintiffs may have relied on the availability of warranties in making their purchases. However, there is no evidence of fraudulent intent by Defendant Chrysler in offering the warranties and there is evidence that defendant honored many claims or had genuine disputes about warranty coverage. Any failure by defendant to honor valid warranties or to fully repair a covered problem must be addressed under a breach of warranty cause of action.

Because there is insufficient evidence to support a fraud claim and because plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine, the Court grants Defendant Chrysler's motion for summary judgment as to all plaintiffs on these claims.

### V. Conclusion

For the reasons explained herein, the Court grants Defendant Chrysler's motion for summary judgment on the fraud, negligent misrepresentation, and tortious breach of warranty claims as to all plaintiffs. The Court also grants defendant's motion on the breach of express warranty and implied warranty of fitness for a particular purpose arising under the UCC. The Court grants defendant's motion on the claim for breach of implied warranty of merchantability as to Ohio Plaintiffs Trgo, Lewis, and McIntosh.

The Court denies Defendant Chrysler's motion for summary judgment on the claim for breach of express written warranty. The Court denies defendant's motion on the claim for breach of implied warranty of merchantability as to Plaintiffs Moore and Erb.

Finally, the Court denies Defendant Chrysler's motion as to Plaintiff Springer's warranty claims, which arise under Louisiana's redhibition statute.

IT IS SO ORDERED.